**In the Matter of the Child of A.S. and A.M., Parents.**

**Nos. A04–2344, A04–2357.**

Court of Appeals of Minnesota.

July 5, 2005.

subd. 1(13). *See Pomrenke v. Comm'r of Commerce,* 677 N.W.2d 85, 91 (Minn.App.2004).

David G. Kuduk, Jessica L. Sterle, Legal Aid Service of Northeast Minnesota, Grand Rapids, MN, for appellant A.S.

Daniel L. Griffith, Griffith Law Office, International Falls, MN, for appellant A.M.

Jennifer J. Hasbargen, Koochiching County Attorney, Rodney Otterness, Assistant County Attorney, International Falls, MN, for respondent.

Considered and decided by HUDSON, Presiding Judge; STONEBURNER, Judge; and DIETZEN, Judge.

## OPINION

STONEBURNER, Judge.

In this consolidated appeal, a mother and father challenge the termination of their parental rights, asserting that the district court erred by applying the presumption of palpable unfitness in Minn. Stat. § 260C.301, subd. 1(b)(4) (2004), to each of them. Mother and father also argue that the record as a whole rebuts any presumption of unfitness. Father also challenges venue in Koochiching County. Because (1) the district court did not apply the presumption of palpable unfitness to father and did not err in applying the presumption to mother; (2) the record does not rebut the presumption of mother's unfitness; (3) the record is sufficient to support the termination of parental rights as to father; and (4) venue was appropriate, we affirm.

## FACTS

Appellant A.M. (father) is a registered sex offender, who was convicted in Hawaii in 1997 of two counts of sexual assault in the third degree for, in 1995, placing his hand on the vagina of a child who was less than 14 years old. The district court found that this crime would constitute criminal sexual conduct in the second degree under Minn.Stat. § 609.343, subd. 1(a) (2004), and that finding is not disputed on appeal. Father moved to Koochiching County, where his parents reside, and supervision of his probation was transferred to Koochiching County. Father successfully completed sex-offender treatment in Minnesota on January 4, 2001, and was discharged from probation on January 28, 2002.

In June 2003, the district court transferred permanent legal and physical custody of three children of appellant A.S.[1] (mother) to her mother and step-father (maternal grandparents). Mother consented to the transfer on the record, on the day a permanency trial was scheduled to begin, in exchange for Koochiching County Social Services' agreement not to seek a TPR. Mother agreed that the entire record in that proceeding, which was incorporated by reference into the district court's findings and disposition order, established the necessary statutory criteria for permanent transfer of custody.[2]

Mother and father met through mother's then-husband, Chad Story. Story and father met in sex-offender treatment that both were attending as a condition of probation for sexual offenses against children. Mother became pregnant by father[3] and delivered a daughter on June 4, 2004, in

---

1. Two of these children were fathered by mother's husband, Chad Story, a convicted child sex offender, who also agreed to the custody transfer. One child was fathered by Matthew Schrum, also a convicted sex offender.

2. The factual bases for the transfer were mother's failure to prevent unsupervised visits by Story and her failure to correct the unsanitary and unlivable condition of the home despite the county's reasonable efforts.

3. Mother subsequently divorced Chad Story and, after the trial that is the subject of this appeal, married father.

Duluth, where mother had gone for medical treatment related to the pregnancy. Because of prior involvement with mother and concern about father's prior conviction, the county obtained an order for emergency protective care of appellants' newborn daughter, removed her from the hospital in Duluth, and placed her in foster care in Koochiching County. The county then initiated a CHIPS action and a petition for TPR, asserting both that mother is palpably unfit to be a party to the parent and child relationship under Minn.Stat. § 260C.301, subd. 1(b)(4) (2004), and that father had been convicted of a crime that falls under the definition of egregious harm under Minn.Stat. § 260C.301, subd. 1(b)(6).

At the TPR trial, father and mother both asserted a Fifth Amendment privilege against self-incrimination and declined to testify. Mother did not present any evidence. Father presented one witness on his behalf.

The district court concluded that the presumption of palpable unfitness in Minn. Stat. § 260.301, subd. 1(b)(4), applies to mother and was not rebutted. The district court also concluded that father poses a serious threat to the physical and sexual safety of the child due to having inflicted egregious harm on a child, as defined in Minn.Stat. § 260C.007, subd. 14(10) (2004). The district court found that it is in the best interests of the child to terminate mother's and father's parental rights. These appeals followed and were consolidated by this court.

## ISSUES

I. Was venue appropriate in Koochiching County?

II. Did the district court err by finding that the transfer of permanent custody of mother's other children pursuant to an agreement between mother and the county was an involuntary transfer, triggering the presumption of palpable unfitness under Minn. Stat. § 260.301, subd. 1(b)(4) (2004), that was not rebutted?

III. Did the district court err by terminating father's parental rights?

## ANALYSIS

### I. Venue

■ Father argues that the Koochiching County District Court lacked jurisdiction because appellants and the child were in St. Louis County when the child was removed from appellants' care. Father relies on Minn.Stat. § 260C.303 (2004), which provides that venue for TPR proceedings "is either in the county where the child resides or is found," unless a protective order is in force at the time a petition for TPR is filed, in which case "the court making the order shall hear" the TPR proceeding unless it transfers the proceeding. But in this case, a protective CHIPS order issued by Koochiching County was in force at the time the petition for TPR was filed. And Minn.Stat. § 260C.121, subd. 1 (2004), provides that "[w]hen it is alleged that a child is in need of protection or services, venue may be in the county where the child is found, in the county of residence, or in the county where the alleged conditions causing the child's need for protection or services occurred." Although the child was born in Duluth, the record demonstrates that mother and father are residents of Koochiching County and that is where they intended to reside with the child. Appellants have not challenged the district court's finding that the parties were only in St. Louis County for medical purposes. We find no merit in father's argument that venue of the TPR was not appropriate in Koochiching County.

## II. Standard of review

■ An appellate court reviews a TPR to determine whether the district court's "findings address the statutory criteria and whether those findings are supported by substantial evidence and are not clearly erroneous." *In re Welfare of Child of W.L.P.* 678 N.W.2d 703, 709 (Minn.App. 2004). Parental rights may only be terminated for "grave and weighty reasons." *Id.* We defer to the district court's findings, but exercise "great caution" in proceedings to terminate parental rights and examine the evidence to determine whether it is clear and convincing. *Id.* "Considerable deference is due to the district court's decision because a district court is in a superior position to assess the credibility of witnesses." *In re Welfare of L.A.F.*, 554 N.W.2d 393, 396 (Minn.1996). The paramount consideration is the best interests of the child, and these interests are balanced against parental rights. *In re Welfare of M.D.O.*, 462 N.W.2d 370, 378 (Minn.1990).

■ The county must prove its case by clear and convincing evidence. Minn. R. Juv. Protect. P. 39.04. But when a parent is determined to be palpably unfit under Minn.Stat. § 260C.301, subd. 1(b)(4) (2004), the burden shifts to the parent to prove that he or she is fit to parent the child. *W.L.P.*, 678 N.W.2d at 709.

## III. Presumption of palpable unfitness as applied to mother

A district court may terminate parental rights on the basis of one or more of the nine grounds listed in Minn.Stat. § 260C.301, subd. 1(b). One of the statutory grounds for TPR is

> that a parent is palpably unfit to be a party to the parent and child relationship because of a consistent pattern of specific conduct before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental, or emotional needs of the child. It is presumed that a parent is palpably unfit to be a party to the parent and child relationship upon a showing that the parent's parental rights to one or more other children were involuntarily terminated or that the parent's custodial rights to another child have been involuntarily transferred to a relative under section 260C.201, subdivision 11, paragraph (e), clause (1), or a similar law of another jurisdiction.[4]

Minn.Stat. § 260C.301, subd. 1(b)(4).

Mother argues that because she consented to the transfer of permanent custody of her other children, the transfer was not involuntary, and the district court erred by applying the presumption of palpable unfitness to her. We disagree.

■ The juvenile court may voluntarily terminate the rights of a parent to a child "with the written consent of a parent who

---

4. The district court correctly noted that the reference in the statute to Minn.Stat. § 260C.201, subd. 11(e)(1) (2004) should be a reference to Minn.Stat. § 260C.201, subd. 11(d)(1) (2004). As we have noted in an unpublished opinion, a 2001 amendment to section 260C.201 moved the contents of paragraph (e) to paragraph (d), but section 260C.301, subd. 1(b)(4) was not amended to reflect this change. *See In re Welfare of Children of Meyer*, No. C6–02–1968, 2003 WL 21061213 *3 n. 1 (Minn.App.), *review denied* (Minn. June 25, 2003) (concluding that intent of legislature is for section 260C.301, subd. 1(b)(4) to reference Minn.Stat. § 260C.201, subd. 11(d)(1)).

for good cause desires to terminate parental rights." Minn.Stat. § 260C.301, subd. 1(a). Under caselaw, good cause for voluntary termination exists under a variety of circumstances usually related to the best interests of the child. *See W.L.P.,* 678 N.W.2d at 712 (citing cases finding good cause based on best interests of child but holding good cause did not exist when sole motivation was avoiding financial burden of supporting children). There is no specific statutory provision for voluntary transfer of permanent legal and physical custody to a relative but because such a transfer of custody is a statutorily approved permanency disposition, we conclude that a parent may voluntarily transfer custody to a relative for good cause.

In *W.L.P.,*[5] we rejected a blanket rule that an admission to an involuntary TPR petition converts the petition into a voluntary petition. *Id.* at 712. We noted that circumstances that justify involuntary termination under section 260C.301, subd. 1(b), do not necessarily justify voluntary termination under section 260C.301, subd. 1(a), and we stated that there are "at least" two procedures parents can utilize to convert an involuntary petition into a voluntary petition. *Id.* We said parents can;

> (1) file a new petition supported by a factual basis articulating good cause and cite to Minn.Stat. § 260C.301, subd. 1(a), as the statutory authority for the petition; or (2) formally amend the original petition to cite to Minn.Stat. § 260C.301, subd. 1(a), as the statutory basis for the petition.

*Id.* We conclude that the same reasoning applies to a permanent transfer of custody,

which is an alternative permanency placement to TPR. *See* Minn.Stat. § 260C.201, subd. 11(d). Therefore, mother's consent to the transfer did not automatically change the transfer from involuntary to voluntary, and we look to the record to see if there is any support for a conclusion that transfer of custody was voluntary and for good cause.

█ On appeal in this case, mother proposes several reasons that would show "good cause" for mother's voluntary transfer of custody, but the only evidence in the record is that mother acknowledged that the record before the district court established the statutory criteria for an involuntary transfer, and she consented to the transfer to avoid termination of her parental rights as to these children. As the district court noted in its findings, mother took no affirmative steps to indicate that she was voluntarily terminating her custodial rights as opposed to admitting that statutory grounds for terminating custodial rights existed, and mother specifically agreed that the record supported the county's petition for an involuntary transfer of custody. Both at the time of the transfer and in the case now before us, the district court made specific findings that statutory grounds for the transfer existed, and the conditions that led to out-of-home placement of the children had not been corrected despite reasonable efforts by the county. Because mother stipulated that the record supported an involuntary transfer of custody and failed to assert that her agreement constituted a voluntary transfer, we conclude that clear and convincing evidence supports the district court's finding that the transfer of permanent custody

---

5. *W.L.P.* involved TPR, so the petition referred to in that case was a termination petition. 678 N.W.2d at 706. The presumption also applies, however, to a transfer of custody. In the case involving mother's other children, the county petitioned for TPR and, in the alternative, permanent transfer of custody. Mother agreed to transfer of custody to avoid TPR.

of mother's three older children was involuntary, making the presumption of palpable unfitness in section 260C.301, subd. 1(b)(4), applicable to her.

We take this opportunity to caution counsel and the district courts to make a clear record to transform a petition for involuntary permanency placement into a voluntary relinquishment of parental rights for good cause. Without clear evidence that an agreement relinquishing parental rights is voluntary and for good cause and is not merely an admission of ground for an involuntary placement, the presumption of palpable unfitness may not be avoided.

In the case before us, the county was required to file a TPR as to mother's rights to her child with father under Minn. Stat. § 260C.301, subd. 3(a) (2004), which provides that the county attorney shall file a TPR petition within 30 days after a determination that a parent is the subject of an order involuntarily transferring permanent legal and physical custody of another child to a relative under section 260C.201, subd. 11(d)(1). And application of the presumption of palpable unfitness relieved the county of the duty to make reasonable efforts to reunite the child with mother. Minn.Stat. § 260.012(a)(1)(iv) (2004). Application of the presumption of unfitness also shifted the burden of proof to mother to rebut the presumption. *In re Welfare of D.L.R.D.*, 656 N.W.2d 247, 250 (Minn.App.2003) (holding that because of the presumption of mother's unfitness, the district court need not establish independent reasons for termination, rather, it is mother's burden to establish the existence of conditions that show her fitness to parent).

Despite her failure to present any evidence or witnesses and her invocation of the Fifth Amendment, mother argues that the record as a whole rebutted the presumption of her unfitness. We disagree. There is little evidence in the record that mother has remedied any of the conditions that led to permanent transfer of custody of the three older children. Significantly, mother was unable to ensure that the older children would not have unsupervised contact with convicted child-sex-offender Chad Story, and mother did not present any plan to protect her newborn child from potential harm by convicted child-sex-offender father. The presumption of palpable unfitness was not rebutted, and the district court did not err in terminating mother's parental rights to the child she had with father.

## IV. Termination of father's parental rights

 Father argues that the district court erroneously applied a presumption of palpable unfitness to him. We disagree. The record is clear that a presumption of palpable unfitness under Minn.Stat. § 260C.301, subd. 1(b)(4), was not applied to father. The district court properly relieved the county of efforts to "reunify" father and child because father had inflicted egregious harm on another child in his care.

The statute provides for TPR if:

a child has experienced egregious harm in a parent's care which is of a nature, duration, or chronicity that indicates a lack of regard for the child's well-being, such that a reasonable person would believe it contrary to the best interest of the child or of any child to be in the parent's care. . . .

Minn.Stat. § 260C.301, subd. 1(b)(6). "Egregious harm" is defined as

the infliction of bodily harm to a child or neglect of a child which demonstrates a grossly inadequate ability to provide minimally adequate parental care. The

egregious harm need not have occurred in the state or in the county where a termination of parental rights action is otherwise properly venued. Egregious harm includes, but is not limited to ... conduct toward a child that constitutes criminal sexual conduct under sections 609.342 to 609.345.

Minn.Stat. § 260C.007, subd. 14 (2004). The statute does not require that the parent has inflicted egregious harm on his own child, but rather, that a child has experienced egregious harm in the parent's care, which demonstrates the parent's grossly inadequate ability to provide minimally adequate parental care to any child. *In re Welfare of A.L. F.*, 579 N.W.2d 152, 155–56 (Minn.App.1998).

In this case, it is undisputed that father was convicted of the equivalent of a violation of Minn.Stat. § 609.343, subd. 1(a) (2004), for the act of placing his hand on the vagina of a young child. In addition, the record contains detailed information about father's admitted sexual acts with other children as young as six months who were in his care and descriptions of his fantasies involving babies.

Due to father's conviction, the county was required to file a TPR under Minn. Stat. § 260C.301, subd. 3(a), and was relieved of reunification efforts under Minn. Stat. § 260.012(a)(1)(i) (2004). The county presented substantial evidence supporting its case. Witnesses who had worked with father extensively when he was in court-ordered sex-offender treatment testified at length. Each testified about father's sexual activities with, and sexual fantasies about, young children and babies; his or her concerns about father being around children without adequate supervision; and the ongoing need for father to maintain a safety plan and support system.

Father chose not to testify and presented only limited evidence in an attempt to rebut the county's evidence that he poses a danger to his child. The record reflects that, to his credit, father completed sex-offender treatment, was discharged from probation that resulted from his criminal conviction, and has not been reconvicted. But father conceived a child with mother, who, at the time, was married to Story, a diagnosed pedophile and convicted child sex offender, and had demonstrated an inability to ensure proper supervision for the children in Story's presence. Father has failed to make any effort to update his safety plan to take into consideration his changed circumstances since he left sex-offender treatment and father has failed to follow his existing safety plan by keeping a dog despite the prohibition in the plan to having a dog, which was designed to minimize triggering events for his propensity toward bestiality.

Father's one witness, a psychologist who had administered the MMPI and met with father for approximately one and a half hours, testified that despite father's history, she believed he *could* be in a position to parent, but acknowledged that spending a lot of time alone with children could be a trigger for re-offending. This witness advised father to update his safety plan and offered to work with him, but there is no evidence that father has followed through with this offer and no testimony as to how the witness proposed to provide accessible ongoing services to father.

The county's witnesses, who had worked extensively with father in the court-ordered sex-offender treatment program, expressed concern about father's failure to update his safety plan, his violation of the plan by keeping a dog, and the import of his comment to a visitation supervisor that his infant daughter was "batting her eyes" at him, suggesting father's ongoing sexualization of infants. All of these witnesses opined that father is not able to be an

appropriate parent to a young child. One psychologist testified that despite the fact that father has not previously been diagnosed as a pedophile, he meets all of the DSMV–IV criteria for such a diagnosis.

In addition, the county social worker testified about her concern that mother and father planned to live with the baby in a trailer in Big Falls, where few support services are available for father, especially in light of mother's demonstrated inability to maintain boundaries between her former sex-offender husband and her older children. Although father's parents also live in Big Falls, the social worker expressed concern over their minimizing of father's sexual behavior and lack of understanding about how mother came to lose custody of her older children.

The record fully supports the district court's finding that father "poses a serious threat to the physical and sexual safety of this child and will continue to pose such a threat into the undetermined future and that [mother] is incapable of providing the necessary supervision and care to assure the safety of this child around [father]." The record also supports the district court's explicit findings that father inflicted egregious harm on other children and is palpably unfit to parent this child, independent grounds that support the determination to terminate father's parental rights.

## DECISION

This case was properly venued in Koochiching County. Because mother failed to transform the petition for involuntary permanent placement of her three older children to a voluntary placement, and the district court properly applied a presumption of palpable unfitness to mother. Mother failed to rebut the presumption of palpable unfitness, and the district court did not err in terminating her parental rights. Clear and convincing evidence supports the district court's findings that father inflicted egregious harm on another child and is palpably unfit to parent, warranting termination of his parental rights.

**Affirmed.**