**In the Matter of the WELFARE OF the CHILDREN OF D.F. and D.F., Parents.**

**No. A07–2239.**

Court of Appeals of Minnesota.

July 8, 2008.

Michael O. Freeman, Hennepin County Attorney, Mary M. Lynch, Assistant County Attorney, Minneapolis, MN, for respondent Hennepin County Human Services and Public Health Department.

Leonardo Castro, Hennepin County Public Defender, Peter W. Gorman, Assistant Public Defender, Minneapolis, MN, for appellants D.F., D.F.

Jody M. Alholinna, El–Ghazzawy Law Offices, Minneapolis, MN, for respondent guardian ad litem.

Angela F. Bailey, Assistant Public Defender, Minneapolis, MN, for respondent Z.C.

Considered and decided by MINGE, Presiding Judge; KLAPHAKE, Judge; and WRIGHT, Judge.

## OPINION

WRIGHT, Judge.

Appellants challenge the district court's decision revoking the stay of their voluntary termination of parental rights and terminating their parental rights. Appellants argue that (1) the district court erred by revoking the stay and terminating their parental rights for good cause and (2) they were deprived of procedural due process. We affirm.

## FACTS

In July 1995, Z.C. was born to mother, who was unmarried at the time.[1] Mother subsequently married father. Mother and father have two children together, S.F. and M.F., who were born in September 1998 and December 2004, respectively.

Father was arrested on July 22, 2005, for allegedly sexually abusing mother's two minor sisters. Although father was never criminally charged, the arresting officers observed illegal drugs and drug paraphernalia in the home that mother and father shared with the children. The officers also observed that the interior of the home was filthy and uninhabitable.

On July 27, 2005, Hennepin County Human Services and Public Health Department (the county) filed a petition alleging that Z.C., S.F., and M.F. were children in need of protection or services (CHIPS). Following an emergency protective-care hearing, the district court ordered protective care, including case plans for mother and father and out-of-home placement of the children.

On April 14, 2006, the county filed a termination-of-parental-rights (TPR) petition pertaining to the three children. The county alleged that the parental rights of mother and father should be terminated because (1) the parents had substantially, continuously, or repeatedly refused or neglected to comply with the duties imposed on them by the parent-child relationship; (2) following the children's placement out of the home, reasonable efforts under the direction of the district court had failed to correct the conditions leading to the children's placement out of the home; and (3) the children were neglected and in foster care.

On September 25, 2006, mother and father voluntarily waived their right to a CHIPS trial and admitted the allegations in the CHIPS petition. At the same hearing, they waived their rights to a TPR trial and agreed to a voluntary termination of their parental rights under Minn.Stat. § 260C.301, subd. 1(a) (2006). The TPR petition was amended "to include Minn. Stat. § 260C.301, subd. 1(a), as a statutory ground for a voluntary termination of parental rights," and mother and father each filed an affidavit with the district court consenting to the voluntary termination of parental rights.

---

1. Z.C.'s father, who voluntarily terminated his parental rights on June 13, 2007, is not a party to this appeal.

To demonstrate good cause for the voluntary termination of their parental rights, as required under section 260C.301, subdivision 1(a), mother and father admitted that (1) their chemical dependency makes them unable to care for the children appropriately; (2) they were provided services to assist them but did not take advantage of the services "until recently"; (3) they did not complete their case plans; (4) they did not correct the conditions that led to the children's out-of-home placement; (5) the children have been in foster care for 14 months; and (6) it is in each of the three children's best interests to terminate the parental rights of mother and father. Based on these admissions, the district court found clear and convincing evidence that there was good cause to terminate the parental rights of mother and father and that termination is in the children's best interests. The district court ordered the voluntary termination of the parental rights of mother and father.

But because mother and father were "making a last minute attempt to engage in services," the parties agreed to stay the voluntary termination of parental rights to give mother and father a chance to engage in their case plans. In an order dated October 9, 2006, the district court stayed the voluntary termination of parental rights for 90 days and directed that a TPR order be entered automatically at the end of the 90–day period, unless the district court extended the timeline for an additional 90–day period, dismissed the proceedings, or entered the TPR order before the expiration of the 90–day period. The district court also ordered mother and father to comply with their case plans.

As part of their court-ordered case plans, mother and father were both required to (1) participate in couples counseling and family therapy; (2) demonstrate sobriety by submitting to drug testing three times per week; (3) participate in one Alcoholics Anonymous (AA) or Narcotics Anonymous (NA) group per week, provide evidence of participation by submitting signed attendance forms, and obtain a sponsor; (4) demonstrate both active participation in all therapies and evidence of positive changes in behavior as a result of participation; (5) obtain safe and suitable housing; and (6) participate in the children's individual therapy as recommended by their therapists and follow their therapists' recommendations. Father's case plan also required him to complete a psychosexual evaluation, follow all resulting recommendations, and complete aftercare and halfway-house treatment through the chemical-dependency treatment program in which he was enrolled. Mother's case plan also required her to participate in individual psychotherapy, complete a chemical-dependency assessment, and follow the resulting recommendations. Consistent with the parties' agreement regarding the stay, the district court's order delineated specific actions that would constitute violations of the stay and advised that "[f]ailure to comply with the case plan may result in the immediate termination of parental rights of the violating parent."

On October 2, 2006, seven days after the parties agreed to the conditions of the stay, mother tested positive for methamphetamine. On December 6, 2006, respondent guardian ad litem moved the district court to revoke the stay with respect to mother based on her positive drug-test results. The county took no position regarding the guardian ad litem's motion. The district court stayed the TPR order for an additional 90–day period and scheduled a hearing on the guardian ad litem's motion for January 2007. Because of scheduling conflicts, the parties were unable to appear until March 23, 2007.

In light of the expiration of the second 90–day period on March 12, 2007, the guardian ad litem withdrew her motion to lift the stay based on mother's drug use, concluding that it was moot. The guardian ad litem and the county then moved the district court to enter the TPR order with respect to both mother and father based on the expiration of the 90–day period during which mother and father were ordered to comply with the conditions of the stay. The county alternatively sought an evidentiary hearing addressing the best interests of the children. Mother and father sought an evidentiary hearing to address "on the merits" whether the stay should be revoked. The district court declined to enter the voluntary TPR order based on the expiration of the 90–day period and extended the stay to permit an evidentiary hearing on the merits.

The parties disputed the appropriate scope of the hearing. Although the parties agreed that the best interests of the children were within the scope of the hearing, they disagreed as to whether the existence of statutory grounds for termination of parental rights should be addressed. Over the objections of mother and father, the district court permitted the parties to address the grounds for *involuntary* termination of parental rights alleged in the original TPR petition. A comprehensive eight-day evidentiary hearing was held in March, June, and July 2007.[2]

Following the hearing, the district court revoked the stay of the voluntary termination of parental rights and ordered the parental rights of mother and father terminated. In support of its decision, the district court made extensive findings of fact addressing father's sexual abuse of mother's sisters; each parent's drug abuse; the children's environment and welfare; the best interests of the children; each parent's compliance with the applicable case plan; and each parent's compliance with the conditions of the stay. The district court concluded that "overwhelming" evidence demonstrates that it is in the best interests of the children to terminate the parental rights of mother and father. The district court found clear and convincing evidence that good cause exists to enter a voluntary termination of the parental rights of mother and father "at the present time." Finding that mother and father had violated the conditions of the stay, the district court "lift[ed] the stay and enter[ed] a voluntary termination order."

The district court also made findings regarding grounds for an *involuntary* termination of parental rights. Reasoning that *In re Welfare of P.R.L.*, 622 N.W.2d 538, 543 (Minn.2001), "seem[s] to indicate that the court can revoke the stay if it finds that any statutory ground alleged in the petition, not just the statutory ground relied upon for the stayed order, exists at the time," the district court addressed the three statutory grounds for involuntary termination alleged in the original TPR petition. Finding clear and convincing evidence to support each of those grounds, the district court concluded that, based on one voluntary ground and three involuntary grounds, terminating the parental rights of mother and father was justified.

Mother and father moved for a new trial, which the district court denied. This appeal followed.

## ISSUES

I. Did the district court err by revoking the stay and terminating the parental rights of appellants for good cause?

2. Z.C. testified briefly in chambers on March 23, 2007. The remainder of the evidentiary hearing was held in June and July.

II. Were appellants deprived of procedural due process?

## ANALYSIS

### I.

■ Generally, our review of an order terminating parental rights is limited to determining whether the district court's findings address the statutory criteria, whether those findings are supported by substantial evidence, and whether they are clearly erroneous. *In re Welfare of P.R.L.*, 622 N.W.2d 538, 543 (Minn.2001) (involuntary termination); *In re Welfare of D.D.G.*, 558 N.W.2d 481, 484 (Minn. 1997) (voluntary termination). Because the district court is in a superior position to observe the witnesses during trial, its assessment of witness credibility is accorded deference on appeal. *In re Welfare of L.A.F.*, 554 N.W.2d 393, 396 (Minn.1996). But we will "closely inquire into the sufficiency of the evidence to determine whether it was clear and convincing." *In re Welfare of J.M.*, 574 N.W.2d 717, 724 (Minn.1998). And we will affirm the district court's termination of parental rights if "at least one statutory ground for termination is supported by clear and convincing evidence and termination is in the child's best interests." *In re Welfare of Children of R.W.*, 678 N.W.2d 49, 55 (Minn.2004).

Mother and father do not challenge the district court's finding that termination is in the children's best interests. Rather, they argue that "they complied with the conditions of the stayed voluntary termination of parental rights ... and therefore, there is no good cause to enter the termination." But their argument conflates two distinct issues: (1) whether there was a sufficient evidentiary basis to establish the existence of a statutory ground to terminate their parental rights and (2) whether there was a sufficient

evidentiary basis to establish a violation of the conditions of the stay.

■ A stay of a TPR order is without "specific authority in statute or rule." *P.R.L.*, 622 N.W.2d at 543; *accord In re Welfare of Children of B.J.B.*, 747 N.W.2d 605, 609 (Minn.App.2008) (discussing *P.R.L.* in context of due-process challenge to stay of involuntary termination of parental rights). Similarly, no statute or rule authorizes the revocation of such a stay or provides guidance as to when revocation is permissible. We recently held that revocation of a stay requires a sufficient evidentiary basis to establish the existence of conditions that satisfy a statutory ground for termination of parental rights when the revocation occurs. *B.J.B.*, 747 N.W.2d at 610 (citing *P.R.L.*, 622 N.W.2d at 544–45). Although a statutory ground is necessary for the district court to revoke the stay, the stay would be meaningless if its revocation were not premised on the parent's failure to comply with the conditions of the stay. *Cf. P.R.L.*, 622 N.W.2d at 544 (expressing concern that a stay "engenders in child and parent the hope of reunification based upon anticipated compliance with the conditions of the stay by a parent who has so steadfastly failed to comply with case plans that it has been found to be in the best interests of the child to have the parent's rights terminated"). Therefore, when considering a motion to revoke a stay, a district court not only must determine whether a statutory ground for terminating parental rights exists, it also must address the parent's compliance with the conditions of the stay to determine whether revocation of the stay is warranted. We address each issue in turn.

### A.

■ The statutory bases for terminating parental rights are divided into two types,

voluntary and involuntary.[3] Minn.Stat. § 260C.301, subd. 1(a), (b) (2006) (addressing voluntary and involuntary terminations, respectively). A voluntary termination requires a parent to consent to the termination for good cause. *Id.*, subd. 1(a). Thus, the statutory ground for terminating the parental rights of mother and father was established in September 2006 when each parent admitted to a factual basis to establish good cause for a voluntary termination under section 260C.301, subdivision 1(a), and consented to the voluntary termination of their parental rights. Although a voluntary termination of parental rights may be rescinded if it is the result of fraud, duress, or undue influence, *cf. D.D.G.*, 558 N.W.2d at 484 (discussing final voluntary termination of parental rights), neither mother nor father has sought to rescind the voluntary termination of parental rights. Rather, they argue that they substantially complied with the conditions of the stay, thereby eliminating the good-cause basis that they previously admitted. But even if substantial compliance with the conditions of a stayed voluntary termination of parental rights has the effect that mother and father purport, the record reflects that they did not substantially comply. Each parent's violations of the conditions of the stay amply demonstrate the continuing existence of the good-cause basis for terminating their parental rights that they admitted in September 2006. Thus, the district court's finding that good cause exists to

terminate the parental rights of mother and father is not clearly erroneous.

## B.

When deciding whether revoking a conditional stay of a voluntary termination of parental rights is warranted, a district court must first determine whether the parent has complied with the conditions of the stay. If the conditions of the stay were violated, the district court must then assess whether the violation warrants revocation. Because revoking the stay results in terminating parental rights, this action may be ordered only when it is in the best interests of the child. *See D.D.G.*, 558 N.W.2d at 484 (stating in context of voluntary termination of parental rights that paramount concern in all TPR proceedings is child's best interests); *cf. In re Tanghe*, 672 N.W.2d 623, 625–26 (Minn. App.2003) (observing in context of involuntary termination of parental rights that if contrary to child's best interests, termination is inappropriate even when statutory ground for termination exists). Whether termination of parental rights is in a child's best interests is a decision that rests within the district court's discretion. *Tanghe*, 672 N.W.2d at 625–26. Therefore, when the district court finds that a parent has violated the conditions of a stay, the decision whether to revoke the stay based on that violation is a matter committed to the district court's discretion. And we will not reverse the district court's decision to revoke a conditional stay of a voluntary termination of parental rights absent an abuse of that discretion.[4]

---

**3.** In all termination proceedings, whether voluntary or involuntary, the paramount consideration is the child's best interests. Minn. Stat. § 260C.301, subd. 7 (2006) (making child's best interests "paramount consideration" in any proceeding under Minn.Stat. § 260C.301); *D.D.G.*, 558 N.W.2d at 484 (stating in context of voluntary termination that "in all termination cases, our paramount

concern is for the child's best interests"). Because mother and father do not challenge the district court's finding that termination of their parental rights is in the best interests of each child, the validity of the district court's best-interests findings is not before us.

**4.** We observe that the nature of the termination of parental rights, i.e., voluntary or involuntary, does not change when a stay is

Here, the district court found multiple violations of the conditions of the stay that are supported by the record. The record demonstrates that mother violated the terms of the stay by (1) testing positive for drug use and submitting a diluted drug-test sample;[5] (2) failing to demonstrate participation in NA; (3) failing to demonstrate that she had obtained a sponsor; (4) precluding the verification of her purported sponsor by revoking her permission to release the information; and (5) failing to demonstrate a positive change, as made evident by her failure to acknowledge the effects of her drug use on her children.

The record similarly demonstrates that father violated the conditions of the stay by (1) failing to demonstrate participation in NA; (2) failing to demonstrate that he had obtained a sponsor; (3) precluding verification of his purported sponsor by revoking his permission to release the information; (4) preventing therapists from accurately assessing his need for treatment by providing false information on the psychosexual evaluation and manipulating the evaluation process; and (5) failing to demonstrate a positive change, as made evident by his manipulation of the psychosexual evaluation, ongoing anger-management problems, and denial of his chemical dependency. Moreover, the record amply demonstrates that both parents violated a district court order issued while the stay was in effect that prohibited them from having visitation with the children without prior written approval from the district court.

Mother and father contend that the district court's findings regarding violations of the conditions of the stay are clearly erroneous because some witnesses testified that mother and father had complied with the court-ordered case plan. But "[t]he weight to be given any testimony, including expert testimony, is ultimately the province of the fact-finder." *In re Welfare of Children of J.B.*, 698 N.W.2d 160, 167 (Minn.App.2005). And there is ample evidence in the record to support the district court's finding that mother and father violated the conditions of the stay.

Finally, mother and father argue that, even if they did not comply with all of the conditions of the stay, the district court's decision to revoke the stay and terminate their parental rights was improper because they complied with "the bulk of the [case] plan." This argument also is premised on a challenge to the district court's credibility determinations, which are the province of the district court. *See In re Welfare of M.D.O.*, 462 N.W.2d 370, 374–75 (Minn. 1990) (stating that fact-finding is domain of district court, which is in a "superior position" to assess witness credibility). After assessing the weight and credibility of the evidence, the district court found that mother and father violated the conditions of the stay. This finding is well supported by the record. Thus, based on the record before us, which establishes each parent's multiple violations of the terms and conditions of the stay, the district court's decision to revoke the stay and enter the

revoked. Thus, for example, if the district court revokes a stay of a voluntary termination of parental rights, it must enter a voluntary TPR order.

5. Although mother argues that a violation of the stay cannot be based on her positive drug test, we are not persuaded. Mother agreed on the record to the conditions of the stay, *see*

Minn. R. Juv. Prot. P. 19.03 (permitting parties to agree on the record to terms of a TPR settlement), and later admitted that she was aware when taking the methamphetamine that led to the positive drug-test results that a single positive test result could lead to termination of her parental rights.

voluntary termination of parental rights was not an abuse of discretion.

## II.

We next address two due-process challenges to the district court's decision raised by mother and father. Whether a parent's due-process rights have been violated in a TPR proceeding is a question of law, which we review de novo. *In re Child of P.T.*, 657 N.W.2d 577, 583 (Minn.App. 2003), *review denied* (Minn. Apr. 15, 2003).

The parent-child relationship is among the fundamental rights protected by the constitutional guarantees of due process. *B.J.B.*, 747 N.W.2d at 608. Due process requires reasonable notice, a timely opportunity for a hearing, the right to counsel, the opportunity to present evidence, the right to an impartial decision-maker, and the right to a reasonable decision based solely on the record. *Humenansky v. Minn. Bd. of Med. Exam'rs*, 525 N.W.2d 559, 565 (Minn.App.1994), *review denied* (Minn. Feb. 14, 1995). The applicable due-process standard in a TPR proceeding resides in the guarantee of fundamental fairness. *Santosky v. Kramer*, 455 U.S. 745, 753–54, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599 (1982); *B.J.B.*, 747 N.W.2d at 608. "Although the amount of process due in a particular case varies with the unique circumstances of that case, prejudice as a result of the alleged violation is an essential component of the due process analysis." *In re Welfare of Child of B.J.-M.*, 744 N.W.2d 669, 673 (Minn.2008) (citations omitted).

## A.

Father argues that his due-process rights were violated because the district court found that he violated the conditions of the stay in part because he failed to admit that he sexually abused mother's sisters. Father maintains that an admission of this nature was not required under the court-ordered case plan. But father did not present this argument to the district court during the evidentiary hearing or in his new-trial motion. And generally we will not address constitutional issues that were not raised before the district court. *In re Welfare of M.H.*, 595 N.W.2d 223, 229 (Minn.App.1999); *cf. Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 310–11 (Minn.2003) (permitting review of "substantive questions of law" not raised in posttrial motions but properly raised during trial). By failing to raise this argument before the district court, father has waived it on appeal.

Regardless of any procedural defects, however, father's claim is without merit because he failed to demonstrate prejudice. Although the district court made several findings pertaining to father's denial that he had sexually abused mother's sisters, those findings were not the sole basis for the district court's determination that father violated the conditions of the stay. As addressed above in Section I.B., mother and father were aware that revocation of the stay and termination of their parental rights could result from failing to comply with any condition of the stay. They failed to comply with several. Thus, even if the district court erred by relying on father's refusal to admit committing the sexual abuse, the district court's reliance on ample other grounds for revoking the stay renders any such error harmless because the essential element of prejudice has not been met.

## B.

Mother and father also argue that, because the district court made findings of fact and conclusions of law pertaining to grounds for an involuntary termination of parental rights in addition to

addressing the grounds for revoking the stay of their voluntary termination of parental rights, they were deprived of due process. This argument is unavailing. Due-process guarantees preclude the termination of parental rights based on a statutory ground that was not included in a petition to terminate parental rights. *B.J.-M.*, 744 N.W.2d at 673. Here, it is undisputed that the petition, which identified section 260C.301, subdivision 1(a) (voluntary termination of parental rights for good cause), as a statutory ground for terminating parental rights, complied with this requirement. Thus, as mother and father concede, entry of a voluntary termination of parental rights would not violate their right to due process.

 When determining whether a termination of parental rights was voluntary or involuntary, we look to the record as a whole, rather than relying solely on the characterization by the district court. *In re Child of A.S.,* 698 N.W.2d 190, 195 (Minn.App.2005), *review denied* (Minn. Sept. 20, 2005); *In re Welfare of Child of W.L.P.,* 678 N.W.2d 703, 712 (Minn.App. 2004). Here, mother and father affirmatively represented to the district court that they agreed to voluntarily terminate their parental rights; and both signed affidavits giving their consent. *See W.L.P.,* 678 N.W.2d at 712 (requiring parent to "take some affirmative steps to voluntarily terminate"). The petition was amended to include section 260C.301, subdivision 1(a), as a statutory ground for a voluntary termination of parental rights. And the district court concluded its findings by stating: "[T]he Court lifts the stay and enters a voluntary termination order." The record demonstrates that it was the intent of mother, father, and the district court that the parental rights of mother and father be *voluntarily* terminated. And the volun-

tary termination of parental rights was accomplished by the district court's order.

Although the district court's findings and conclusions regarding *involuntary* TPR grounds were not pertinent to the motion to revoke the stay, any error in making these findings is harmless. *See In re Welfare of D.J.N.,* 568 N.W.2d 170, 176 (Minn.App.1997) (refusing to reverse termination of parental rights for harmless error); *cf. State v. Cannady,* 727 N.W.2d 403, 405 (Minn.2007) (applying harmless-error analysis to due-process argument).

## DECISION

 The consent of appellants to the voluntary termination of their parental rights for good cause was an adequate statutory ground for terminating their parental rights after revoking the stay. Because the record supports the district court's finding that appellants violated the conditions of the stay, the district court did not abuse its discretion by revoking the stay and terminating appellants' parental rights under Minn.Stat. § 260C.301, subd. 1(a) (2006). Nor did the district court violate appellants' due-process rights in doing so.

**Affirmed.**