*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1750**

In the Matter of the Welfare of the Child of: M. H. and S. R., Parents

**Filed March 16, 2015
Affirmed
Connolly, Judge**

Hennepin County District Court
File No. 27-JV-14-147

Mary F. Moriarty, Hennepin County Public Defender, Peter W. Gorman, Assistant Public Defender, Minneapolis, Minnesota (for appellant M.H.)

Michael O. Freeman, Hennepin County Attorney, Cory A. Carlson, Assistant County Attorney, Minneapolis, Minnesota (for respondent Hennepin County Human Services and Public Health Department)

Petra E. Dieperink, Assistant County Attorney, Minneapolis, Minnesota (for respondent S.R.)

Shirley A. Reider, Reider Law Office, St. Paul, Minnesota (for guardian ad litem Nicole Rice)

Considered and decided by Stauber, Presiding Judge; Peterson, Judge; and Connolly, Judge.

UNPUBLISHED OPINION

**CONNOLLY**, Judge

Appellant challenges the involuntary termination of her parental rights on the grounds that (1) the district court abused its discretion by denying her a continuance and (2) she was deprived of her procedural-due-process rights. We affirm.

## FACTS

On June 20, 2013, appellant M.H. gave birth to X.R., and on June 24, X.R. tested positive for opiates. M.H. admitted to using drugs during her pregnancy, and on June 28, Hennepin County Human Services filed a child-in-need-of-protection-or-services (CHIPS) petition for X.R. and placed X.R. in the care of M.H.'s stepmother.

On September 23, 2013, the district court adjudicated X.R. CHIPS and transferred legal custody to Hennepin County. The court instituted case plans for M.H. and S.R., X.R.'s presumed father.[1] Meanwhile, X.R. remained with M.H.'s stepmother. He now suffers from a host of medical conditions, including an inguinal hernia, torticollis, plagiocephaly, and neurofibromatosis.

On January 9, 2014, Hennepin County petitioned to terminate both M.H.'s and S.R.'s parental rights over X.R. A subsequently filed amended petition sought termination of M.H.'s parental rights under Minn. Stat. § 260C.301, subd. 1(b)(1), (2), (4), (5), (8) (2012). In support of the petition, Hennepin County filed four court orders transferring custody of four children from M.H. and three court orders terminating

---

[1] S.R. is presumed to be X.R.'s father based on genetic testing.

M.H.'s parental rights to four other children.[2]  In each of those cases, the courts proceeded by default, due to M.H.'s failure to appear.

On May 27, 2014, the district court continued a pretrial and trial proceeding and scheduled a new pretrial and trial date for August 4, and a second trial date for September 8.  As a condition for the continuance, the court required M.H. and S.R. to meet certain conditions, including submitting to random drug testing.  Both M.H. and S.R. failed to provide the required drug tests, and the county presumed that they failed.

On August 4, 2014, M.H. arrived at the courthouse for pretrial and trial but left prior to the proceeding.  According to M.H.'s attorney, she was agitated, due to a thyroid condition and impending surgery.  S.R., who also arrived at the courthouse, left with M.H.  The county attorney moved to proceed by default, arguing that M.H. and S.R. failed to present any documentation regarding M.H.'s medical condition, that the case was open for almost 14 months, and that permanency considerations were paramount. M.H.'s attorney objected to the motion, arguing that M.H.'s thyroid condition "may very well be the reason why [she] was not able to regulate herself" and that M.H. should not be penalized for "laboring under a medical condition" during the already stressful termination proceeding.  M.H.'s attorney moved for a continuance to the second trial date.  S.R.'s attorney supported the motion for a continuance, concurring with the belief that M.H. was dealing with a thyroid condition and stating that S.R. left only for the purpose of ensuring M.H.'s safety.  S.R.'s attorney also noted that S.R. wanted to pursue a voluntary termination.  The guardian ad litem's attorney supported the motion to

---

[2] M.H. has also placed a child for adoption through a private agency.

proceed by default, arguing that the case had been previously continued and that the court should "start working towards . . . permanency." The district court granted the motion to proceed by default and implicitly denied a continuance. But the court stated:

> In the event that [M.H.]'s failure to regulate herself in the courtroom and perceived instability and the fact that she left the courtroom before trial, in the event that is due to a medical condition [M.H.] may provide evidence to this Court of either her sobriety today by taking a UA or the fact that a medical explanation by a doctor that her behavior today including her leaving is due to an immediate thyroid condition, I will allow that evidence to be submitted to this Court after court and we can address it at a later date.

During the default proceeding, the county attorney offered 36 exhibits into evidence, en masse, without objection. The county attorney then examined the Hennepin County social worker and the guardian ad litem, using numerous yes-or-no or otherwise leading questions. Both witnesses gave opinion testimony regarding X.R.'s best interests. No objections were made to either the form or substance of the questions asked by the county attorney. M.H.'s attorney briefly examined the Hennepin County social worker and the guardian ad litem, and the guardian ad litem's attorney briefly examined the guardian ad litem.

At the conclusion of the proceeding, the district court reiterated that M.H. and S.R. had two weeks "to make any motion to reopen th[e] record." M.H. submitted no evidence of sobriety or her medical condition and made no motion to reopen the record within the designated timeframe. In fact, M.H.'s attorney e-mailed the court indicating that "[she] w[ould] not be submitting any medical justification for [M.H.]'s absence from court."

On September 9, 2014, the district court terminated M.H.'s and S.R.'s parental rights over X.R. Specifically, the court terminated M.H.'s parental rights under Minn. Stat. § 260C.301, subd. 1(b)(2), (4), (5), (8). On September 10, M.H. moved to reopen the default or for a new trial under Minn. R. Juv. Prot. P. 45.04(f), (h), 46.02(e). She argued that she believed she would prevail on the merits, there was insufficient evidence to support termination, there was insufficient evidence to support the court's determination that termination was in X.R.'s best interests, and the court erred by allowing opinion testimony on X.R.'s best interests. On September 19, the court denied M.H.'s motion.

This appeal follows.

## D E C I S I O N

### *Denial of continuance*

M.H. first argues that the district court erred by denying her a continuance. She cites *In re Welfare of Children of S.O.*, No. A04-0830, 2004 WL 2857672 (Minn. App. Dec. 14, 2004), *review denied* (Minn. Mar. 15, 2005), for the proposition that her alleged medical condition justified a continuance.

> The court may . . . continue . . . a trial to a later date upon written findings or oral findings made on the record that a continuance is necessary . . . for accumulation or presentation of evidence or witnesses, to protect the rights of a party, or for other good cause shown, so long as the permanency time requirements set forth in these rules are not delayed.

Minn. R. Juv. Prot. P. 39.02, subd. 2. "Whether to grant a continuance is a ruling within the trial court's discretion, which will not be reversed absent a showing of a clear abuse

5

of that discretion." *In re Welfare of J.A.S.*, 488 N.W.2d 332, 335 (Minn. App. 1992) (citing *Dunshee v. Douglas*, 255 N.W.2d 42, 45 (Minn. 1977)), *review denied* (Minn. Oct. 20, 1992).

M.H.'s reliance on *S.O.* is misplaced for two reasons. First, although persuasive, unpublished opinions of this court are not precedential. *Vlahos v. R&I Const. of Bloomington, Inc.*, 676 N.W.2d 672, 676 n.3 (Minn. 2004); *see also* Minn. Stat. § 480A.08, subd. 3(c) (2014) ("Unpublished opinions of the [c]ourt of [a]ppeals are not precedential."). Second, this case is factually distinguishable from *S.O.* In that case, the "mother sought a continuance to acquire information about whether the lithium added to her medications would stabilize her mood and allow her to complete her case plan." *S.O.*, 2004 WL 2857672, at *2. This court reversed the district court's denial of a continuance because the mother was pursuing new evidence that she could not have previously accumulated with diligence. *Id.* at *2-3. In this case, M.H.'s attorney provided no justification for a continuance beyond the assertion that M.H. was absent due to an alleged medical condition. M.H.'s attorney in no way suggested that a continuance would allow for accumulation of evidence that could not have previously been obtained with diligence.

M.H. also fails to address X.R.'s interest in permanency. Although the district court did not discuss permanency as a reason for denying a continuance, the guardian ad litem's attorney and county attorney both argued that the court should proceed by default because the case was previously continued and was open for almost 14 months and that the court needed to move toward permanency. *See J.A.S.*, 488 N.W.2d at 335 (noting that

"[t]he record shows the guardian ad litem believed it would be best for the children if the detention hearing proceeded as scheduled . . . .").

Finally, M.H. has failed to demonstrate prejudice from the district court's denial of a continuance. *See id.* The court provided M.H. two weeks to submit a drug test demonstrating sobriety or some type of medical evidence demonstrating that her absence was due to her medical condition. The court explicitly stated that if M.H. submitted such evidence, it would address it. M.H. failed to submit any evidence in the designated time.

We conclude that the district court therefore did not abuse its discretion by denying the continuance.

***Procedural due process***

M.H. next argues that the district court violated her procedural-due-process rights by (1) allowing leading questions, resulting in "the unending succession of 'yes' and 'no' answers from the agency witness and from the Guardian" and (2) allowing "opinion testimony from both the agency social worker and the Guardian-ad-Litem." She argues that "[t]here is simply nothing in [Minn. R. Juv. Prot. P.] 18 and nothing in any decided case which permits the juvenile court to grant a default termination of parental rights upon the sort of 'pretend' trial that was had here."

"Due process requires reasonable notice, a timely opportunity for a hearing, the right to counsel, the opportunity to present evidence, the right to an impartial decision-maker, and the right to a reasonable decision based solely on the record." *In re Welfare of Children of D.F.*, 752 N.W.2d 88, 97 (Minn. App. 2008). "The applicable due-process standard in a [termination] proceeding resides in the guarantee of fundamental fairness."

7

*Id.* (citing *Santosky v. Kramer*, 455 U.S. 745, 753-54, 102 S. Ct. 1388, 1394-95 (1982)). "Although the amount of process due in a particular case varies with the unique circumstances of that case, prejudice as a result of the alleged violation is an essential component of the due process analysis." *In re Welfare of Child of B.J.-M.*, 744 N.W.2d 669, 673 (Minn. 2008) (citations omitted).

"Whether a parent's due-process rights have been violated in a termination proceeding is a question of law, which this court reviews de novo." *In re Welfare of Children of B.J.B.*, 747 N.W.2d 605, 608 (Minn. App. 2008). "It is well settled that where the trial court has jurisdiction of the offense and of the defendant a judgment will be held void for want of due process only where the circumstances surrounding the trial are such to make it a sham and a pretense rather than a real judicial proceeding." *In re Welfare of Children of Coats*, 633 N.W.2d 505, 512 (Minn. 2001) (quotation omitted).

In this case, the district court received evidence by way of exhibits and testimony. M.H.'s attorney was present throughout the proceeding, and the record contains no suggestion that she was restricted from fully participating therein. In fact, the court expressly afforded M.H.'s attorney the opportunity to argue against proceeding by default, move for a continuance, cross-examine witnesses, present evidence in opposition to the termination, and present a closing argument. M.H.'s attorney could have raised objections at any time during the proceeding, as evidenced by her objection to proceeding in default. And M.H. makes no claim that her attorney provided deficient or ineffective assistance. *See In re Welfare of L.B.*, 404 N.W.2d 341, 345 (Minn. App. 1987) (analyzing appellant's claim that he was denied fair trial because, among other things,

"his court-appointed counsel was ineffective"). Notably, M.H. cites no legal authority to support her contention that the alleged evidentiary errors, if truly errors, rendered the proceeding procedurally inadequate. She makes no claim that she did not receive "reasonable notice, a timely opportunity for a hearing, the right to counsel, the opportunity to present evidence, the right to an impartial decision-maker, [or] the right to a reasonable decision based solely on the record." *See D.F.*, 752 N.W.2d at 97.

Finally, M.H. has failed to demonstrate any prejudice from the alleged violation of her procedural-due-process rights. *See id.* (determining that appellant failed to demonstrate prejudice from alleged due-process violation). Indeed, she makes no argument that the district court's factual findings are incorrect or that the outcome of the case would be different without the alleged violation.

For all of the above reasons, we conclude that this case was not "a sham [or] a pretense rather than a real judicial proceeding." *Coats*, 633 N.W.2d at 512. It was "fundamental[ly] fair[]." *See D.F.*, 752 N.W.2d at 97.

**Affirmed.**