*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1194**

In the Matter of the Welfare of the Child of:
C. L. O. and J. J. S., Parents.

**Filed April 11, 2016
Affirmed
Randall, Judge***
**Concurring specially, Connolly, Judge**

Hennepin County District Court
File Nos. 27-JV-14-7270; 27-JV-13-7143

Mary F. Moriarty, Chief Hennepin County Public Defender, David W. Merchant, Assistant Public Defender, Minneapolis, Minnesota (for respondent C.L.O.)

Michael O. Freeman, Hennepin County Attorney, Cory A. Carlson, Assistant County Attorney, Minneapolis, Minnesota (for respondent HCHS & PHD)

Michael J. McLaughlin, Legal Rights Center, Minneapolis, Minnesota (for appellant J.J.S.)

Eric S. Rehm, Burnsville, Minnesota (for guardian ad litem)

Considered and decided by Connolly, Presiding Judge; Peterson, Judge; and Randall, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1

**RANDALL**, Judge

On appeal from the termination of his parental rights to his child, appellant argues that the district court's refusal to allow him to call two witnesses at a permanency hearing violated his due-process rights, statutory rights, and procedural rights. The district court erred by failing to permit the witnesses to testify, but we affirm because the error did not unduly prejudice appellant.

**FACTS**

J.J.S., born on November 29, 2010, is the child of appellant J.J.S., Sr. and C.L.O.[1], who never married. Respondent Hennepin County (county) received a report in July 2013 that appellant had problems with "chronic and severe . . . alcohol and controlled substance abuse" that were occurring in front of the child. Appellant also assaulted C.L.O. in J.J.S.'s presence during July 2013. Appellant was convicted of fifth-degree domestic assault for that offense and received a probationary sentence. J.J.S. was placed out of home in November 2013, and was adjudicated a child in need of protection or services (CHIPS) in February 2014.

Following the CHIPS determination, appellant agreed to a case plan that addressed his chemical-dependency and domestic-violence issues. The case plan also required him to complete a psychological evaluation, obtain housing, cooperate with county social services, and follow professional recommendations. During the CHIPS period, appellant

---

[1] C.L.O. voluntarily terminated her parental rights and is not a party to this appeal.

continued to have problems with drugs and alcohol and was involved in repeated incidents of domestic abuse. Urinalysis testing conducted early in the case showed that appellant's urine contained methamphetamines and chemicals found in marijuana. Throughout the CHIPS period, appellant did not maintain sobriety unless he was incarcerated.

As to domestic abuse, in December 2013 appellant possessed a firearm and shot into the front of C.L.O.'s car as she drove away from him. For this incident, he pleaded guilty to possession of a firearm by a prohibited person and received an executed 60-month sentence that he began serving in January 2015. Appellant was also charged with two controlled substance offenses in January 2015 that involved possession of methamphetamine and OxyContin, and he pleaded guilty to another firearm offense in exchange for dismissal of the controlled substance charges; his sentence for the 2015 conviction is concurrent with the 2013 sentence. The district court found that appellant failed to participate in any domestic violence programming.

Appellant also did not address his psychological issues during the pendency of the case. An initial mental-health assessment diagnosed appellant as antisocial and narcissistic, but he did not complete further testing or follow recommendations.

With regard to appellant's parent-child relationship with J.J.S., the district court found that appellant

> loves [J.J.S.], maintained regular visitation with [J.J.S.] when he was not incarcerated, and engaged in parenting education through Catholic Charities. When he was not incarcerated, [appellant] had supervised visits with [J.J.S.] . . . for two hours every Saturday. [Appellant] was good at attending his visits, he was attentive, appropriate within the context of the visit,

3

affectionate, and, at times, [J.J.S.] demonstrated difficulty separating from [appellant].

The district court also found that appellant attended parenting education from April to June 2014.

The county petitioned to terminate appellant's parental rights in November 2014. At the two-day permanency trial held in April 2015, the district court sustained the county's objection to appellant calling two witnesses to testify: appellant's mother, K.S., and his friend, T.D. Appellant intended to call the two witnesses to testify about appellant's ability to care for J.J.S. in the period before the child was declared CHIPS. The county objected on relevance grounds, arguing that any testimony from those two witnesses pertained to J.J.S.'s first two years of life, the child had been in the custody of the county for two additional years, and the current issue before the court was whether the child could be returned to the family in the reasonably foreseeable future. The county agreed to "stipulate that [appellant] loves his child, [and] that he had a strong connection with his child while the child lived with him for the first year or two of his life." Appellant's attorney argued that appellant's mother's observations were relevant to whether it would be in J.J.S.'s best interests to have appellant's parental rights terminated because appellant's demonstrated capacity to care for his son could be "relevant to his capacity in the future to provide adequate care for his son." Appellant's attorney also argued that parenting is a fundamental constitutional right, and denial of appellant's right to call witnesses was a violation of his due-process rights.

4

The district court sustained the objection, ruling that the proposed testimony was cumulative of other testimony. The district court also stated that the testimony would not "advance[] the issue that we have before us now, and that is whether [appellant] can parent this child in the reasonably foreseeable future." The district court noted that J.J.S. had been in out-of-home placement for approximately 640 days at the time of the permanency hearing, appellant had roughly 40 months before he would be released from prison, appellant had failed to participate in offered programming, the child's out-of-home placement was "way, way beyond the permanency guidelines," and hearing testimony about appellant's "good visits" with his child was not "very helpful" to "overcome the hurdle of the reasonably foreseeable future of the reunification taking place because of [appellant's] incarceration." The district court further noted that "time is a resource" and stated:

> [W]e've been dancing around how [appellant], how bad [appellant] feels, but let's look at this, let's cut right to the chase. We've been messing around with this for *a whole day now*, but the issue, the real issue is that we haven't had any testimony about any completion of programming on [appellant's] part.

(Emphasis added.)

Following the permanency trial, the district court concluded that three of five alleged statutory grounds for termination of appellant's parental rights were supported by clear and convincing evidence: (1) appellant neglected the duties of the parent-child relationship, Minn. Stat. § 260C.301, subd. 1(b)(2) (2014); (2) following J.J.S.'s out-of-home placement, reasonable efforts by the county failed to correct the conditions that led

5

to the placement, Minn. Stat. § 260C.301, subd. 1(b)(5) (2014); and (3) J.J.S. is neglected and in foster care, Minn. Stat. § 260C.301, subd. 1(b)(8) (2014). The district court found that termination is in J.J.S.'s best interests.

In this appeal, appellant challenges the district court's ruling to exclude his witnesses' testimony.

## D E C I S I O N

"The parent-child relationship is among the fundamental rights protected by the constitutional guarantees of due process." *In re Welfare of Children of D.F.*, 752 N.W.2d 88, 97 (Minn. App. 2008); *see Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060 (2000) ("The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court."). Due process, which ensures fundamental fairness, includes "the opportunity to present evidence." *D.F.*, 752 N.W.2d at 97; *see In re Welfare of L.J.B.*, 356 N.W.2d 394, 397 (Minn. App. 1984) (stating that "a valid decision to terminate parental rights" must be based on evidence subject to "due process safeguards"). The "amount of process due in a particular case varies with the unique circumstances of that case," but "prejudice as a result of the alleged violation is an essential component of the due process analysis." *In re Welfare of Child of B.J.-M.*, 744 N.W.2d 669, 673 (Minn. 2008). This court gives de novo review to "[w]hether a parent's due-process rights have been violated in a TPR proceeding." *D.F.*, 752 N.W.2d at 97; *see Carrillo v. Fabian*, 701 N.W.2d 763, 768 (Minn. 2005) ("Whether due process is required in a particular case is a question of law, which we review de novo.").

6

The district court erred by short-circuiting[2] the trial process in this case. When information from a one-year period postdating an initial termination hearing was used to support a termination decision, this court remanded for the district court to consider that information in an evidentiary hearing, ruling that the district court's termination decision should be subject to "due process safeguards." *L.J.B.*, 356 N.W.2d at 397. The district court's ruling in this case effectively prevented appellant from offering evidence to develop his theory of the case, particularly as it pertained to the important factor of the child's best interests. The district court violated appellant's due-process rights by ruling to exclude this evidence.

Appellant can succeed on a due-process claim, however, only if he demonstrates that he was prejudiced by the district court's exclusion of the two witnesses' testimony. *See B.J.-M.*, 744 N.W.2d at 673 (stating that "prejudice as a result of [an] alleged violation is an essential component of" a due-process claim); *see also D.F.*, 752 N.W.2d at 98 (applying harmless-error rule to due-process argument in a termination of parental rights case). With but a perfunctory nod to real justice, the "harmless-error" rule is an ever-enlarging hole in the dike of traditional constitutional protections promised to trial litigants. We reluctantly apply it here. Appellant's stated purpose for offering the evidence was to establish appellant's "capacity in the future to provide adequate care for his son." He cannot show substantial prejudice because the district court made findings supportive of this point, and those findings, in turn, are supported by appellant's testimony and the

---

[2] "[A] whole day" does not seem an imposition on a termination of parental rights case.

7

testimony of adverse witnesses, such as the guardian ad litem. The guardian ad litem testified that appellant and J.J.S. have a close bond and that appellant appropriately parented J.J.S. during visitation. The substance of their testimony on behalf of appellant was heard and acknowledged by the district court.

Appellant also argues that the district court's exclusion of the two witnesses' testimony violated Minn. Stat. § 260C.163, subd. 8 (2014) ("The minor and the minor's parent, guardian, or custodian are entitled to be heard, to present evidence material to the case, and to cross-examine witnesses appearing at the hearing."), and Minn. R. Juv. Prot. P. 39.03, subd. 2 (providing that in termination proceedings, a parent "shall have the right to" present evidence and witnesses). To the extent that these issues concern evidentiary rulings or rules of trial procedure, they are waived because appellant did not move for a new trial. *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 309 (Minn. 2003) (restating "longstanding rule" that "matters such as trial procedure, evidentiary rulings and jury instructions are subject to appellate review only if there has been a motion for a new trial in which such matters have been assigned as error" (quotation omitted)).

In addition, even though the district court erred by excluding the evidence, appellant is not entitled to automatic reversal, because termination proceedings are subject to the harmless-error rule. *D.F.*, 752 N.W.2d at 98 (applying harmless-error analysis in termination of parental rights cases). The evidence was cumulative, and the district court made findings supportive of the proffered evidence. The district court's decision focused on other termination factors, including reasonableness of services offered to appellant by

8

the county, appellant's failure to address his chemical-dependency and psychological issues, appellant's recurrent incidents of domestic abuse, the length of time J.J.S. has been out of home and will continue to be out of home, and J.J.S.'s best interests. In light of the record, which includes definitive evidence supporting the district court's decision to terminate parental rights, the error in the exclusion of the testimony from appellant's mother and friend does not change our ultimate analysis.

**Affirmed**.

**CONNOLLY**, Judge (concurring specially)

While I agree with the majority's decision as to affirming the termination of appellant's parental rights, I write separately because I do not see any violation of appellant's right to due process in the district court's exclusion of testimony from appellant's mother and his friend. The district court was told by appellant's attorney that "the reason that we were planning to call [appellant's mother] to testify is to talk about [appellant's] capacity to care for his son before this case began . . ." and that "[appellant's friend] would have been offered for the same purpose generally as [appellant's mother]." The district court excluded this testimony as cumulative and irrelevant to the issue before the court, namely whether "[appellant] can parent this child in the reasonably foreseeable future." The record supports both reasons for the exclusion.

Testimony from appellant, from a worker at Catholic Charities, from a social worker, and from the child's guardian ad litem indicated that appellant loved his child, had successfully provided care for him during the first years of his life, and had appropriately participated in visitation with him. The district court's findings reflected this testimony: it found that "[appellant] was good at attending his visits, he was attentive, appropriate within the context of the visit, affectionate, and, at times, [the child] demonstrated difficulty separating from [appellant]" and that "the testimony at trial made it clear that [appellant] loves his son and has an interest in maintaining the parent-child relationship." Further testimony as to appellant's relationship with his son would have been cumulative. "Although relevant,

evidence may be excluded if its probative value is substantially outweighed . . . by considerations of . . . needless presentation of cumulative evidence." Minn. R. Evid. 403.

Perhaps more significantly, the excluded testimony would not have been relevant to the issue before the district court: whether appellant would be able to parent his child in the foreseeable future. When the trial occurred in April 2015, appellant had not provided care for the child since he was removed from the home in October 2013 and had not seen the child since January 2015, when appellant began serving a 60-month sentence in prison. Testimony that appellant had at times successfully provided care for the child prior to the child's removal from his home and had successfully participated in visitation prior to January 2015 was not relevant to the facts that (1) the child had been in foster care for more than 18 months and needed permanency and (2) appellant's incarceration would prevent him from providing a permanent home for the child in the foreseeable future. "Evidence which is not relevant is not admissible." Minn. R. Evid. 402.

Because I see no violation of appellant's due-process rights in the exclusion of his witnesses' testimony, I do not reach the issue of whether a purported violation of those rights prejudiced appellant, but, in the event of such a violation, I would have no compunction in applying the harmless-error rule.