In the Matter of the WELFARE OF
L.M.M., A.S.M., and B.N.M.

No. C8–84–2202.

Court of Appeals of Minnesota.

Aug. 13, 1985.

Review Denied Oct. 18, 1985.

David J. Ten Eyck, Legal Aid Service of Northeastern Minnesota, Brainerd, for appellant.

Richard A. Zimmerman, Aitkin, Guardian Ad Litem for the Minor Children.

Jeffrey J. Haberkorn, Sp. Asst. Co. Atty., County of Aitkin, Aitkin, for respondent.

Considered and decided by LESLIE, P.J., and FOLEY and HUSPENI, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

Petition was brought by the county to terminate the parental rights of appellant. The trial court ordered appellant's parental rights terminated. We affirm.

## FACTS

In April of 1981, appellant and her two children, L.M.M. age 5 and A.S.M. age 2, moved to Aitkin, Minnesota from Hennepin County after some rather turbulent years that included a long involvement with Hennepin County Social Service. B.N.M. was born on December 26, 1981. Less than a year after moving to Aitkin, on March 10, 1982, a petition for child neglect was filed against appellant in the Aitkin County Court. On the same day the court issued an order for the immediate custody of appellant's children. An initial hearing was held on March 29, 1982, and the court ordered the children placed in foster homes after concluding that there had been abuse of appellant's children. The court also ordered appellant and other members of her family to submit to psychiatric evaluations.

A psychologist conducted evaluations of appellant and her children in various combinations and in various settings. The psychologist reported that the appellant was impulsive, with a tendency toward self-centered and idiosyncratic thought, was impatient and unpredictable, and that children in her care were at risk of physical punishment in unpredictable patterns. The psychologist recommended at that time that parental rights be terminated for all of the children.

Reports were also filed by the Aitkin County Family Service Agency outlining appellant's prior involvement with the Hennepin County Family Service Agency. The report chronicled episodes of sexual abuse of appellant's young daughter and physical abuse of appellant's young son by appellant and others. The report also summarized incidents that had occurred in Aitkin County, including an incident at the Aitkin County Hospital where appellant tried to take her three month old son from the hospital without hospital discharge and without clothing in February of 1982.

An adjudicatory hearing was held on October 20, 1982, based on a petition alleging that the appellant's three minor children were neglected. The court found that appellant lacked adequate parental skills, was unable to adequately protect and provide for her children, and that she neglected her children. The court ordered the children to remain in foster homes pending a final dispositional hearing. The court also ordered further psychological evaluations and further supplemental reports by the Aitkin County Family Service Agency for purposes of the dispositional hearing.

The dispositional hearing was held on December 13, 1982. At that time, the court found that appellant's poor parental attitude and understanding of her children's needs jeopardized the welfare of the children. Therefore, the court ordered that the Aitkin County Family Service Agency maintain custody of the three children. The court also ordered that the matter be set for further review in no more than six months, during which time further psycho-

logical evaluations would be conducted and a plan for reuniting the family would be implemented by the county family service agency.

After this order, the county family service agency began implementing a plan for reuniting the family. The plan involved supervised visitations between the appellant and her children. The length of these visits would be increased in increments as time passed, and the impact of the visits would be documented by social workers and the children's foster parents. While there were some improvements in appellant's attitudes and actions, the social workers concluded that the changes were not substantial, and on August 2, 1983, a petition for termination of parental rights was filed.

A hearing to terminate appellant's parental rights was held on November 22 and 23 of 1983. The trial court made detailed findings of fact that appellant was self-centered, unable to manage her financial affairs, unaware of or unconcerned about her children's needs, and unable to provide genuine consistent affection to each child. The court found that appellant was unable to assume her responsibilities as a parent to her children and that her present inability had a high probability of being permanent. The court concluded that appellant had substantially, continuously, or repeatedly refused to give her children necessary parental care, protection, and control and that she was palpably unfit to be a party to the parent-child relationship with her children because of a consistent pattern of conduct that was permanently detrimental to the physical and mental health of the children. Therefore, the court ordered that appellant's parental rights should be terminated.

The Court of Appeals, in an order dated January 9, 1985, granted a discretionary review following a request by appellant's attorney who was specially appointed counsel for the purpose of this appeal. Appellant claims the lower court's decision was contrary to the evidence and that the trial court improperly applied Minnesota law. For the reasons that follow, we disagree,

and we affirm the trial court's determination.

## ISSUES

1. Does the court of appeals have jurisdiction to hear an appeal from an order terminating parental rights?

2. Did the trial court err in finding that appellant's parental rights should be terminated?

## ANALYSIS

 The initial issue we must decide is whether this court has jurisdiction to hear an appeal from an order terminating parental rights. In this court's earlier order granting discretionary review of this controversy, the parties were specifically ordered to address the question of whether an appeal may be taken from an order terminating parental rights rather than from a judgment. Under Minn.Stat. § 260.291 (1982), a person may appeal "from a final order affecting a substantial right of the aggrieved person, including but not limited to an order adjudging a child to be dependent, [or] neglected * * *" The question then becomes was the trial court's order of terminating parental rights a "final order." The order clearly determines the outcome of this action, and as the Minnesota Supreme Court said in *In The Matter of the Welfare of J.M.S.*, 268 N.W.2d 424, 428 (Minn.1978), "[t]he termination order under § 260.221 is a final adjudication of parental rights * * * *" Therefore, we hold that an order terminating parental rights is an appealable order.

Minn.Stat. § 260.221 (1982) allows the juvenile court, upon petition, to terminate all rights of a parent to a child in certain instances. Under § 260.221(b)(2), the court may terminate parental rights if it finds that "the parent has substantially, continuously, or repeatedly refused or neglected to comply with the duties imposed upon that parent by the parent and child relationship * * * *" In addition, the court may terminate parental rights under § 260.221(b)(4) if it finds that "a parent is palpably unfit to be a party to the parent and child relationship because of a consistent pattern of specific conduct before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be permanently detrimental to the physical or mental health of the child." The court may also terminate the parental rights under § 260.221(b)(5) if it finds that "following upon a determination of neglect or dependency, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination." Finally, the court may terminate parental rights under § 260.221(b)(7) if it finds that "the child is neglected and in foster care." The trial court in this case concluded that appellant fit within all four of the above-mentioned categories and thus terminated her parental rights.

 It is true, as appellant claims, that the Minnesota Supreme Court has repeatedly said that courts should proceed with extraordinary caution in parental termination cases. *See In The Matter of the Welfare of Kidd*, 261 N.W.2d 833, 835 (Minn.1978). The record on appeal must contain clear and convincing evidence that satisfies the alleged statutory grounds for termination. *See In The Matter of the Welfare of Gillispie*, 296 N.W.2d 878 (Minn.1980). This is especially true if the parent is the natural parent of the child because there is a strong presumption that the natural parent is fit and suitable to care for the child. *See In Re Dependency of Klugman*, 256 Minn. 113, 118, 97 N.W.2d 425, 428 (1959).

 In spite of all of the protections afforded the parent in a termination proceeding, appellant's arguments must fail because there is ample evidence to support the trial court's decision. The trial court had before it evidence of appellant's history of violent, unpredictable behavior toward her children. The court also heard testimony from a psychologist who examined appellant, her husband, and the children, and concluded that appellant was not psychologically able to raise children. The court finally heard testimony from social workers who spent over two hundred hours

with appellant, her husband, and her children, and chronicled a long history of uncooperative and violent behavior by the appellant, as well as numerous specific instances where appellant's behavior towards her children was improper. While the appellant now criticizes the credentials of these people, as well as the amount of time that the psychologist actually spent with appellant, the credibility of witnesses is not for this court to determine. *See Georgopolis v. George,* 237 Minn. 176, 54 N.W.2d 137, 141 (1952). We cannot say that these witnesses were incapable of being believed, nor that they did not present clear and convincing evidence that appellant was unfit to be a parent.

### DECISION

Because the record contains ample evidence to support the trial court's findings, we affirm.