**In the Matter of the WELFARE OF J.A.S., F.A.B., and C.J.S., Jr., Children.**

**No. C3–92–516.**

Court of Appeals of Minnesota.

Aug. 18, 1992.

Review Granted Oct. 20, 1992.

Michael R. Ruffenach, Bemidji, for appellant Father.

Timothy R. Faver, Beltrami Co. Atty., Vance B. Grannis, III, Asst. Co. Atty., Bemidji, for respondent County.

Respondent Mother, pro se.

Lynn Schroeder, Bagley, Guardian ad litem.

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment

Considered and decided by SHORT, P.J., and SCHUMACHER and SCHULTZ *, JJ.

## OPINION

SCHUMACHER, Judge.

The father challenges the state's failure to call a qualified expert witness under the Indian Child Welfare Act to determine whether his three sons were in need of protection or services. 25 U.S.C. §§ 1901–1923 (1988). The father also challenges the trial court's denial of a continuance. We affirm in part, reverse in part and remand.

## FACTS

The father and three children involved in this case are enrolled members of the Red Lake Band of the Minnesota Chippewa Tribe. The three children, J.A.S., F.A.B., and C.J.S., Jr., were taken into protective custody on December 5, 1991. Five days later, a petition for protection or services was filed alleging that the children had been victims of abuse or resided or would reside with a perpetrator of domestic abuse pursuant to Minn.Stat. § 260.015, subd. 2a(2) (1990); the children were without proper parental care pursuant to Minn.Stat. § 260.015, subd. 2a(8); and the children's associations were injurious or dangerous to them under Minn.Stat. § 260.015, subd. 2a(9).

The petition alleged, and the trial court subsequently found, that the father struck one child in the back with a belt as a method of disciplining him for taking a can of pop without permission. The court also found the father threatened to burn down his house as a matter of discipline and did light a piece of paper on fire. The court also found that the father had left one child with a neighbor when the child was sick, and he could not be reached when the child was in need of emergency medical care.

During a detention hearing held on December 17, 1991, the trial court issued an order to hold the three boys in foster care pending the next appearance before the

pursuant to Minn. Const. art. VI, § 2.

court. Trial commenced on February 14, 1992. Prior to the presentation of evidence, the father's attorney asked the court for a continuance. The attorney stated he was only able to talk with the father about the case during a few telephone conversations and a brief discussion immediately before the trial. The attorney had been appointed to represent the father on January 1, 1992. The father, however, had been in inpatient treatment at Brainerd State Hospital for 30 days. Subsequently, from February 1 until the day before trial, the father was in aftercare at a halfway house in Duluth. The trial court denied the request for a continuance.

The state called three social workers, a family practice physician, and three teachers as witnesses at the hearing. None of these individuals were presented as qualified expert witnesses pursuant to the Indian Child Welfare Act. After the close of the case, the father's attorney noted that the state had failed to call a qualified expert witness. The trial court found the state had proved its case and issued an order finding the three boys in need of protection or services.

On March 10, 1992, a dispositional hearing was held. The trial court then issued an order reiterating its finding that the children were in need of protection or services and imposed certain conditions upon the father. The father appeals from the February 14 order.

### ISSUES

1. Did the state meet its burden of proof in showing Indian children were in need of protection or services when it did not present testimony of a qualified expert witness as provided for in the Indian Child Welfare Act?

2. Did the trial court abuse its discretion in denying the father's request for a continuance?

### ANALYSIS

■ 1. To answer whether the state was required to call a qualified expert witness to prove the children were in need of protection or services involves construction of the Indian Child Welfare Act. Construction of a statute is a question of law which is reviewed de novo by an appellate court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

The parties do not dispute that each of the boys is an "Indian child" so that the Act applies in this case. *See* 25 U.S.C. § 1903(4). Congress enacted the Act to prevent the breakup of Indian families. 25 U.S.C. § 1901(4). It establishes minimum federal standards to regulate the removal of Indian children from their families:

> No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, *including testimony of qualified expert witnesses*, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

25 U.S.C. § 1912(e) (emphasis added). "Foster care placement," in turn, is

> [a]ny action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated.

25 U.S.C. § 1903(1)(i). An exception to these requirements was created for the emergency removal of a child:

> Nothing in this subchapter shall be construed to prevent the emergency removal of an Indian child who is a resident of or is domiciled on a reservation, but temporarily located off the reservation, from his parent or Indian custodian or the emergency placement of such child in a foster home or institution, under applicable State law, in order to prevent imminent physical damage or harm to the child.

25 U.S.C. § 1922.

The father argues expert witness testimony was required at the February 14 hearing. The state, however, maintains

such testimony was not necessary because it was a detention hearing. We disagree. It is likely that the testimony of a qualified expert witness was not required at the December detention hearing since that hearing constituted an "emergency removal" within the meaning of section 1922. *See State ex rel. Juvenile Dep't of Multnomah County v. Charles,* 688 P.2d 1354, 1358 n. 2 ("[I]t is implicit that 'emergency removal' authority extends to non-reservation Indian children."), *rev. allowed,* 298 Or. 427, 693 P.2d 48 (1984), *and rev. dismissed,* 701 P.2d 1052 (1985). However, the February hearing was to determine whether the children were in need of protection or services. The February hearing therefore was a precursor to disposition of the matter. *See* Minn.Stat. § 260.191, subd. 1(a)(2)(ii) (1990) ("*If the court finds that the child is in need of protection or services* * * *,* it shall enter an order making any of the following dispositions of the case * * *." (emphasis added)).

■ Most importantly, the February 14 order directs "foster care placement" within the meaning of the Indian Child Welfare Act. The finding that the children were in need of protection or services was in effect an "action removing [these] Indian child[ren] from [their] parent * * * for temporary placement in a foster home." 25 U.S.C. § 1903(1)(i). Testimony of a qualified expert witness was thus necessary for the state to meet its burden of proof at that hearing. *See Matter of N.L.,* 754 P.2d 863, 866–68 (Okla.1988) (expert witness testimony regarding whether continued custody of Indian child by mother would result in serious emotional or physical harm to child was necessary for adjudication of child as deprived); *see also Matter of K.A.B.E.,* 325 N.W.2d 840, 843 (S.D. 1982) (mother maintains dispositional hearing terminating her parental rights was flawed due to lack of testimony from qualified expert witness).

For these reasons, we reverse the trial court's determination that the children were in need of protection or services. The record indicates that it may be appropriate for the children to remain in emergency foster placement. *See* 25 U.S.C. § 1922 (emergency placement terminates when it "is no longer necessary to prevent imminent physical damage or harm to the child"). We remand this issue to the trial court for consideration.

■ 2. The father also argues the trial court abused its discretion in denying his request for a continuance. Whether to grant a continuance is a ruling within the trial court's discretion, which will not be reversed absent a showing of a clear abuse of that discretion. *Dunshee v. Douglas,* 255 N.W.2d 42, 45 (Minn.1977). The record shows the guardian ad litem believed it would be best for the children if the detention hearing proceeded as scheduled on February 14. *Cf.* Minn.Stat. § 260.155, subd. 1 (1990) (hearing in proceeding involving children alleged to be in need of protection or services may not be continued for more than one week unless court makes specific findings that continuance is in children's best interests).

We additionally note that the father and his attorney had opportunities to talk on the telephone during father's treatment. Moreover, the father has not shown any prejudice by reason of the trial court's denial of a continuance. Under these circumstances, we find no abuse of discretion.

## DECISION

The state did not meet its burden of proof that the Indian children were in need of protection or services when it failed to present testimony of a qualified expert witness pursuant to the Indian Child Welfare Act. The trial court did not abuse its discretion in denying the father's continuance request.

Affirmed in part, reversed in part and remanded.