# STATE OF MINNESOTA
# IN COURT OF APPEALS
## A23-1806
## A23-1807

In the Matter of the Welfare of the Child of: R. V. M. and J. R. M., Parents.

**Filed June 10, 2024**
**Affirmed**
**Harris, Judge**

Blue Earth County District Court
File No. 07-JV-23-2807

Kenneth R. White, Law Office of Kenneth R. White, P.C., Mankato, Minnesota (for appellant R.V.M.)

Steven D. Winkler, Brandt & Winkler, P.A., St. Peter, Minnesota (for appellant J.R.M.)

Patrick R. McDermott, Blue Earth County Attorney, Susan B. DeVos, Assistant County Attorney, Mankato, Minnesota (for respondent Blue Earth County Human Services)

Kaylee Polzin, St. Peter, Minnesota (guardian ad litem)

Considered and decided by Johnson, Presiding Judge; Harris, Judge; and Reilly, Judge.[*]

## SYLLABUS

I.    The pendency of an appeal from a district court order involuntarily terminating a parent's parental rights to one or more children does not preclude that order from giving rise to a presumption of palpable unfitness under Minnesota Statutes section 260C.301, subdivision 1(b)(4) (2022).

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

II.    To meet the burden of production necessary to rebut the presumption of palpable unfitness arising from an involuntary termination of parental rights under Minnesota Statute section 260C.301, subdivision (1)(b)(4) (2022), a parent must produce evidence related to the statutory reasons identified by the district court as a basis for the involuntary termination to support a finding that the parent is suitable to be entrusted with the care of the children.

## OPINION

**HARRIS**, Judge

In these consolidated appeals, appellants challenge the termination of their parental rights to one of their children. Appellants argue the district court erred when it relied on the statutory presumption of palpable unfitness under Minnesota Statutes section 260C.301, subdivision 1(b)(4) (2022), to terminate their parental rights to this child, when their appeal from the prior involuntary termination relating to two older children that gave rise to the statutory presumption was still pending. Additionally, appellants argue that the district court erred in its determinations that they did not rebut the presumption of palpable unfitness, that reasonable efforts were made to reunite the family, and that termination of parental rights was in the child's best interest. We affirm.

## FACTS

Appellants R.V.M. (mother) and J.R.M. (father) are married and have three biological children. On July 14, 2023, the district court terminated appellants' parental rights to their first two children, A.M. and C.M. Among other findings and conclusions, the district court concluded that C.M. suffered egregious harm while in appellants' care

2

and terminated appellants' parental rights under Minnesota Statutes section 260C.301, subdivision 1(b)(6). In a four-month period, C.M.'s injuries included a fractured femur, two fractured ribs, three skull fractures, a brain bruise, brain bleeds, and bruises to the head and back. The district court found that appellants were among six possible abusers and appellants knew or should have known of C.M.'s injuries. Mother appealed on July 28, 2023. Father appealed on August 1, 2023. The appeals were consolidated on August 1, 2023.

Approximately three days after mother appealed, she gave birth to a third child, H.M., (the child) who is the subject of this appeal. Police placed the child on a 72-hour-hold immediately after birth.

On August 1, 2023, respondent Blue Earth County Human Services (the county) petitioned the district court to terminate appellants' parental rights to the third child. The termination-of-parental-rights (TPR) petition alleged that, based on the statutory presumption in section 260C.301, subdivision 1(b)(4), appellants were palpably unfit to be parties to the parent-child relationship because their parental rights to their first two children were involuntarily terminated.

On August 2, 2023, the child was discharged from the hospital and placed in foster care. The same day, the parties appeared for an emergency protective care (EPC) hearing. The county moved to be relieved of reunification efforts. The district court noted the pending appeal and ordered the county to make reasonable efforts towards reunification. In the order following the EPC hearing, the district court ordered the county to file a case plan.

3

On August 15, 2023, the parties appeared for an admit-deny hearing. Appellants denied the allegations in the petition and the parties discussed scheduling the matter for trial. The court and parties discussed the pending appeal of the prior termination and noted that oral argument would be scheduled. The county attorney stated, "I don't know if there is an ability to stay this TPR to hold off on it pending until the appeal is settled because should something happen on that appeal that disrupts that termination that would obviously impact the presumption that exists." Appellants' counsel informed the district court that appellants would waive any timelines and requested "that the trial be set out as long as it can be." The district court requested appellants file something with the court indicating that they agree to waiving any timelines. Appellants later filed correspondence stating they agreed to waive the timelines for a trial based on good cause and the best interests of the child.

On September 8, 2023, the parties appeared for a pretrial hearing. The district court noted that trial must be scheduled within 60 days of the admit-deny hearing and asked the parties for any legal authority that would allow appellants to waive this timeline.[1]

Neither party provided any authority to waive the timelines and the district court moved forward with scheduling trial. The parties never applied to stay the prior order

---

[1] *See* Minn. Stat. § 260C.509 (2022) (providing that a trial required under Minnesota Statutes section 260C.163 (2022) shall be commenced within 60 days of the admit-deny hearing); *see also* Minn. R. Juv. Pro. P. 58.01, subd. 1 ("A trial regarding a permanency or termination of parental rights matter shall commence within 60 days of the first admit/deny hearing.").

4

terminating appellants' parental rights to their first two children. Minn. Stat. § 260C.415, subd. 1 (2022); Minn. R. Juv. Pro. P. 23.03.

On September 25, 2023, the parties appeared for an additional pretrial hearing. The county social worker reported that the child was attending visits three times a week with appellants, that appellants had physicals scheduled to address any health concerns, and that she met with appellants to develop goals for their case plans. The social worker reported she had the case plans drafted, provided a copy to mother, and was going to provide copies to appellants' counsel. The district court directed the county to provide the case plans to appellants' counsel by the end of the business day. The case plans were not filed with the district court and are not included in the record on appeal.

On October 10, 2023, the parties appeared for a court trial. The county updated the district court, informing it that oral argument had not been scheduled for the appeal on the prior termination. The district court received two exhibits: Exhibit 1—the order terminating the parental rights to A.M. and C.M.—and Exhibit 2—a medical record from the child's birth. Based on the prior TPR order, the district court found that the presumption of palpable unfitness applied under Minnesota Statute section 260C.301, subdivision 1(b)(4), and it was appellants' burden to produce evidence to rebut the presumption.

Appellants testified to rebut the presumption of palpable unfitness. Appellants described their relationship and interaction with the child, including details about the child's birth, and attending medical appointments and supervised visits. Appellants also testified about items on their case plans, including their housing, employment, transportation, and health. Appellants described their home as clean and free of hazards

5

and testified that they had all the necessary items to care for the child. Appellants discussed completing a parenting capacity assessment and starting a parenting class.

Mother testified about her mental health, including therapy, medication management, and coping skills. She stated she would like to attend trauma therapy, get her GED, and work on stress management. Father testified that he had a therapy appointment scheduled, was willing to complete a medication evaluation, and had a physical examination scheduled to address his physical-health symptoms.

The county called the guardian ad litem (GAL) and social worker as witnesses. The social worker testified about her contact with appellants and the supervised visits, and she described the child's relationship with her siblings. The social worker testified that appellants have not sufficiently addressed the concerns raised in the prior TPR and that the current TPR was in the child's best interest. The GAL testified that she was not aware of any significant changes the appellants made following the previous TPR to allow them to safely parent the child, and that TPR was in the child's best interest.

The district court did not make credibility findings about any of the testimony. Following the court trial, the district court terminated appellants' parental rights based on the presumption of palpable unfitness and found that the child's best interests in maintaining a relationship with her siblings and growing up in a safe environment outweighed her interests in maintaining a parent-child relationship with appellants. The district court concluded that appellants did not rebut the presumption of palpable unfitness in part because they "failed to show they are currently suitable to be entrusted with the care of [the child] without acknowledgment of the egregious harm to [C.M.] and how they

6

would work together and with various services to ensure egregious harm would never come to [the child]."

Mother and father appeal.[2]

**ISSUES**

I.    Did the district court err by applying the statutory presumption of palpable unfitness pursuant to Minnesota Statute section 260C.301 subdivision 1(b)(4), while the appeal of the prior TPR order was pending?

II.   Did the district court violate appellants' right to due process by applying the statutory presumption of palpable unfitness pursuant to Minnesota Statute section 260C.301 subdivision 1(b)(4), before the completion of the appeal process in the prior TPR?

III.  Did the district court abuse its discretion in denying appellants' motion for a continuance pending the completion of the appeal process in the prior TPR?

IV.   Did the district court erroneously consider the underlying grounds for the previous termination when addressing whether appellants rebutted the statutory presumption of palpable unfitness?

V.    Did the district court err by finding that the county made reasonable efforts to reunite the family and correct the conditions that led to out-of-home placement?

VI.   Did the district court abuse its discretion by finding that termination of parental rights was in the child's best interest?

---

[2] While these appeals were pending, this court affirmed the termination of mother's and father's parental rights to the first two children. *In re Welfare of Children of R.V.M.*, No. A23-1103, 2024 WL 413505 (Minn. App. Feb. 5, 2024), *rev. denied* (Minn. Mar. 12, 2024).

7

Parental rights may be terminated only for "grave and weighty reasons." *In re Welfare of M.D.O.*, 462 N.W.2d 370, 375 (Minn. 1990). We affirm the district court's termination of parental rights if: (1) one of the statutory bases for terminating parental rights exists; (2) reasonable efforts toward reunification were made or were not required; and (3) termination is in the child's best interests. Minn. Stat. §§ 260C.301, subds. 1(b), 7, 8, .317, subd. 1 (2022); *In re Welfare of Children of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008). In reviewing the district court's order terminating parental rights, we review the underlying factual findings for clear error. *S.E.P.*, 744 N.W.2d at 385, 387. We review the district court's ultimate decision whether to terminate parental rights for an abuse of discretion. *In re Welfare of Child of J.K.T.*, 814 N.W.2d 76, 87 (Minn. App. 2012).

## I. The district court did not err by applying the statutory presumption of palpable unfitness pursuant to Minnesota Statute section 260C.301, subdivision 1(b)(4), while the appeal of the prior TPR order was pending.

First, we address appellants' argument that there was no statutory basis to terminate appellants' parental rights. Appellants argue that this court should read section 260C.301, subdivision 1(b)(4), to require that an appeal of a prior order terminating parental rights be complete before that order can trigger the statutory presumption. Based on this reading of the statute, appellants then assert that this court should rule that, because the appeal of the prior TPR order was not complete here, no prior termination of parental rights existed to trigger the presumption of palpable unfitness.

"Statutory interpretation is a question of law, which we review de novo." *In re Welfare of Child of S.B.G.*, 991 N.W.2d 874, 884 (Minn. 2023) (quotation omitted). "Under

the de novo standard, we do not defer to the analysis of the courts below, but instead we exercise independent review." *Id.* (quotation omitted). When engaging in statutory interpretation, we first determine whether the statute's language, on its face, is ambiguous. *Id.* A statute is ambiguous when its language is subject to more than one reasonable interpretation. *Id.*; *In re Welfare of Child of J.D.T*, 946 N.W.2d 321, 327 (Minn. 2020).

In interpreting statutory language, we give words and phrases their plain and ordinary meaning. *In re Fin. Resp. for Out-of-Home Placement of S.M.*, 812 N.W.2d 826, 829 (Minn. 2012); *see also Rodriguez v. State Farm Mut. Auto. Ins. Co.*, 931 N.W.2d 632, 634 (Minn. 2019) ("We construe words and phrases 'according to rules of grammar and according to their common and approved usage.'") (quoting *State v. Riggs*, 865 N.W.2d 679, 682 (Minn. 2015))). We will not disregard a statute's clear language to pursue the spirit of the law. *J.D.T.*, 946 N.W.2d at 327. If a statute is unambiguous, we apply the statutory language. *Id.* If the statute is ambiguous, "then we may apply the canons of construction to resolve the ambiguity." *State v. Thonesavanh*, 904 N.W.2d 432, 435 (Minn. 2017).

The relevant part of the statute states: "It is presumed that a parent is palpably unfit to be a party to the parent and child relationship upon a *showing* that the parent's parental rights to one or more other children were involuntarily terminated . . . ." Minn. Stat. § 260C.301, subd. 1(b)(4) (emphasis added). Appellants argue that the statute is ambiguous because "showing" is subject to more than one reasonable interpretation. Appellants argue that the statute could mean that a prior termination under appeal is final

for the purposes of the statutory presumption, or it could mean that the entire appellate process must first be completed for the statutory presumption to apply. We disagree.

The plain meaning of "showing" is inconsistent with appellants' argument that the appellate process must be complete. The word "showing," as used in the statute, establishes that there is a condition needed to trigger statutory presumption of palpable unfitness. That is, the statute authorizes the district court to presume that a parent is palpably unfit upon a determination that their parental rights to one or more children were involuntarily terminated.

Although the legislature has not defined "showing," we conclude that the statutory language is sufficiently clear on its face and unambiguous for us to conclude that a prior district court order involuntarily terminating a parent's parental rights can constitute a "showing that the parent's parental rights to one or more other children were involuntarily terminated" under Minnesota Statute section 260C.301, subdivision 1(b)(4). Appellants' request that we read the statute in a way that would require us to add words and meaning to the statute. *See E.M.B.*, 987 N.W.2d at 601. But we cannot add words to an unambiguous statute under the guise of statutory interpretation. *County of Dakota v. Cameron*, 839 N.W.2d 700, 709 (Minn. 2013); *see also Great River Energy*, 860 N.W.2d at 364 (stating that we cannot add words to a statute that were intentionally or inadvertently omitted). "[W]hen a question of statutory construction involves a failure of expression rather than an ambiguity of expression, courts are not free to substitute amendment for construction and thereby supply the omissions of the legislature." *E.M.B.*, 987 N.W.2d at 601 (quotation omitted); *Reiter v. Kiffmeyer*, 721 N.W.2d 908, 911 (Minn. 2006) ("And

we will not read into a statute a provision that the legislature has omitted, either purposely or inadvertently.").

In essence, appellants' position is that their parental rights are not terminated until the appellate process is complete. By contrast, the county argues that an order terminating parental rights is effective immediately, unless that order is stayed. We agree with the county.

Minnesota Statutes section 260C.415 (2022), regarding stays of orders pending appeal, states, in relevant part:

> An appeal may be taken by the aggrieved person from a final order of the juvenile court affecting a substantial right of the aggrieved person, including but not limited to an order adjudging a child to be in need of protection or services, neglected and in foster care . . . . *The order of the juvenile court shall stand, pending the determination of the appeal, but the reviewing court may in its discretion and upon application stay the order.*

Minn. Stat § 260C.415, subd. 1 (emphasis added); *see also* Minn. R. Juv. Prot. P. 23.03 ("The service and filing of a notice of appeal does not stay the order of the juvenile court."). Appellants argue that this statute does not address when a termination is effective and absent language addressing the effectiveness of a termination this court should hold that a termination is effective upon the completion of the appellate process and the presumption of palpable unfitness should not apply. We disagree.

Minnesota Statutes section 260C.415, subdivision 1, states that an appeal may be taken from "a final order" and the order of the juvenile court shall stand pending a request for a stay. Appellants have not identified any authority that an order terminating parental

11

rights does not generate a presumption of palpable unfitness to be a party to the parent-child relationship until the conclusion of the appeal process. To the contrary, section 260C.415, subdivision 1, notes that a final order of the district court remains in effect unless a party applies for a stay and the court grants that relief. *See* Minn. Stat. § 260C.415, subd. 1 (stating order stands pending appellate determination absent court staying order); *see also* Minn. R. Juv. Prot. P. 23.03 (explaining filing appeal does not stay order appealed and describing process for obtaining stay); *cf. Brown-Wilbert, Inc. v. Copeland Buhl & Co*, 732 N.W.2d 209, 221 (Minn. 2007) ("Accordingly, we reaffirm our prior decisions that, for res judicata purposes, a judgment becomes final when it is entered in the district court and it remains final, despite a pending appeal, until it is reversed, vacated or otherwise modified."). Therefore, absent a stay pending the prior appeal, that order was effective during pendency of that appeal.

We conclude "showing" is unambiguous because the statute states that the "order of the juvenile court shall stand." Minn. Stat § 260C.415, subd. 1. There is no indication that the legislature contemplated that an appeal of a prior TPR must be complete before the rebuttable presumption of palpable unfitness applies. Therefore, the prior termination order, even when appealed, is a "showing" under section 260C.301, subdivision 1(b)(4), and the presumption of palpable unfitness applies.

The district court's July 14, 2023 order terminating appellants' parental rights was a final, appealable order. *See In re Welfare of L.M.M.*, 372 N.W.2d 431, 433 (Minn. App. 1985) (holding that order terminating parental rights is final and appealable), *rev. denied* (Minn. Oct. 18, 1985). During the pendency of the appeal of the prior order, appellants'

12

parental rights were involuntarily terminated, and they did not apply for and there was no stay of the prior order. The district court found that, because there was no stay of the prior TPR order, the TPR order was in effect and the presumption of palpable unfitness applied. Therefore, the district court did not err by applying the rebuttable presumption of palpable unfitness as a statutory basis for termination of their parental rights in this case when the prior TPR was pending appeal.

**II.     The district court did not violate appellants' right to due process by applying the statutory presumption of palpable unfitness before the completion of the appeals process in the prior TPR.**

Appellants assert that the district court violated their right to due process by applying the statutory presumption of palpable unfitness before the completion of the appeals process in the prior TPR.

Appellants' attorneys did not argue before the district court that applying the statutory presumption of palpable unfitness prior to the completion of the appeals process in the prior TPR would violate the parents' right to due process.[3] Because appellants did

---

[3] At the EPC hearing mother's attorney stated that the prior case was under appeal. On August 15, 2023, at the admit-deny hearing the county attorney admitted that, "should something happen on that appeal that disrupts that termination that would obviously impact the presumption that exists." Father's attorney, who was appearing for both parents, asked for visits and to waive the timeline, entered denials, and did not raise the due-process issue. On September 8, 2023, at the first pretrial hearing the district court discussed the timelines and requested the parties provide legal authority to waive the timelines. At the second pretrial on September 25, 2023, father's counsel requested the county withdraw the TPR petition so that the parties can work a case plan while the appeal is underway. At trial, mother testified about the appeal and its effect on her bond with the child. In post-trial briefing the district court received a proposed order that stated, "it is inappropriate to terminate their parental rights to the child before a decision in their appeal in the prior case is made." Appellants did not specifically argue that due process necessitated a continuance. The district court declined to continue the hearing, in part because of the strict timelines.

not present their due-process argument to the district court, we conclude that appellants forfeited this argument. *See In re Welfare of Child of Coats*, 633 N.W.2d 505, 512 (Minn. 2001) (providing that appellate courts "consider only those issues that were presented and considered by the [district] court"); *In re Welfare of C.L.L.*, 310 N.W.2d 555, 557 (Minn. 1981) (declining to address a constitutional issue raised for the first time on appeal from a termination of parental rights); *see also In re Welfare of Children of D.F.*, 752 N.W.2d 88, 97 (Minn. App. 2008) (concluding that a due-process argument in a TPR appeal was not properly before this court when the argument was not made before the district court); *In re Welfare of A.L.F.*, 579 N.W.2d 152, 156 (Minn. App. 1998) (stating that [e]ven in the context of termination of parental rights, failure to raise constitutional issues in the district court precluded the issues from being raised on appeal").

**III.    The district court did not abuse its discretion by denying appellants' motion for a continuance of their TPR trial pending completion of the appeal process in the prior TPR.**

Appellants argue that the district court abused its discretion when it misapplied Minnesota Rule of Juvenile Protection Procedure 5.01, subdivision 2, and did not grant their continuance. Appellants argue that the district court did not address whether it was in the child's best interest to continue the trial for more than a week. A district court may continue a TPR trial upon findings made on the record that "a continuance is necessary for the protection of the child, for accumulation or presentation of evidence or witnesses, to protect the rights of a party, or for other good cause shown, so long as the permanency time requirements set forth in these rules are not delayed." Minn. R. Juv. Prot. P. 58.01, subd. 2. It is within the district court's discretion whether to grant a continuance, and absent a

14

showing of a clear abuse of discretion, this court will not reverse it. *In re Welfare of J.A.S.*, 488 N.W.2d 332, 335 (Minn. App. 1992), *rev. denied* (Minn. Oct. 20, 1992). Here, the parties appeared at a hearing on September 8, 2023, at which time the parties requested that the trial be continued until the resolution of the appeal in the prior TPR, and appellants noted they would waive the timelines outlined in the Minnesota Rules of Juvenile Protection Procedure. The district court found that neither party provided any legal authority to delay the court trial or to allow appellants to "waive" the timelines outlined in the Minnesota Rules of Juvenile Protection Procedure, and based on that denied the continuance request and set the matter for trial. Under the circumstances of this case, the district court did not abuse its discretion in denying appellants' continuance request based on the delay of the permanency timeline. *See* Minn. R. Juv. Prot. P. 5.01, subd. 1.

**IV.    The district court did not err by considering the underlying grounds for the previous termination in determining whether appellants rebutted the statutory presumption.**

Appellants challenge the district court's conclusion that they failed to rebut the presumption of palpable unfitness. We review de novo whether a parent has rebutted the presumption that they are palpably unfit to parent. *In re Welfare of Child of J.A.K.*, 907 N.W.2d 241, 246 (Minn. App. 2018), *rev. denied* (Minn. Feb. 26, 2018).

Under Minnesota Statute section 260C.301, subdivision 1(b)(4), the district court must presume that a parent is palpably unfit if there is a showing that a parent's rights to another child was previously involuntarily terminated. The statutory presumption is "easily rebuttable." *Id.* at 245 (quotation omitted). A parent may rebut the presumption of palpable unfitness by producing evidence that would be sufficient to justify a finding of

15

fact that the parent is not palpably unfit. *Id.*; at 246; *see also In re Welfare of Child of R.D.L.*, 853 N.W.2d 127, 137 (Minn. 2014) ("[T]he parent needs to produce only enough evidence to support a finding that the parent is suitable to be entrusted with the care of the children." (quotation omitted)).

If a parent introduces evidence in an attempt to rebut the statutory presumption, a district court must determine whether the evidence is sufficient to raise a genuine issue of fact as to whether the parent is palpably unfit. *J.A.K.*, 907 N.W.2d at 246. "Whether the evidence satisfies the burden of production is determined on a case-by-case basis." *Id.* (quotation omitted). To analyze whether a parent rebutted the statutory presumption, the district court should consider the evidence submitted by the parent(s) without weighing it against any contrary evidence. *See In re Welfare of Child of J.W.*, 807 N.W.2d 441, 447 (Minn. App. 2011) (concluding that the parent's evidence, "if believed," would support a finding that the parent was not palpably unfit and that the evidence was therefore sufficient to rebut the statutory presumption), *rev. denied* (Minn. Jan. 6, 2012).

Because the presumption of palpable unfitness is based on a prior involuntary termination of parental rights, it was necessary for the district court to consider whether appellants produced evidence related to the findings from the previous termination. *See J.A.K.*, 907 N.W.2d at 246-48 (examining the grounds supporting prior termination of

mother's parental rights in determining whether mother rebutted the presumption of palpable unfitness).[4]

We conclude that the district court did not err in determining that appellants did not rebut the presumption of palpable unfitness because appellants did not produce sufficient evidence to support a finding that they were suitable to be entrusted with the care of the child, when considering the finding of egregious harm in the prior termination proceeding.

In the TPR order, the district court discussed the presumption and appellants' attempt to rebut the presumption. The district court noted that appellants' parental rights to two older children were previously involuntarily terminated because: (1) one of the children, C.M., experienced egregious harm, including fractures and bruises to various parts of his body while in appellants' care, and appellants knew or should have known that C.M. experienced egregious harm while in their care; (2) appellants substantially, continuously, or repeatedly refused or neglected to comply with duties imposed upon the parent by the parent-child relationship because they did not provide for the children's medical, educational, and other needs; and (3) appellants were palpably unfit to be a party to the parent-child relationship because of a consistent pattern of a failure to protect the

---

[4] We addressed this issue in a nonprecedential opinion, *In re Welfare of Child of J.B.-M.*, No. A19-0902, 2019 WL 6837932, at *3-4 (Minn. App. Dec. 24, 2007), *rev. denied* (Minn. Mar. 18, 2008), and held that in order to rebut the presumption of palpable unfitness, evidence of the previous termination is relevant and necessary to determine whether the parent is fit to be entrusted with the care of the child because he or she has addressed the condition or conditions that led to the previous termination. Although not precedential, we find the reasoning in *J.B.-M.* to be persuasive. *See State v. Roy*, 761 N.W.2d 883, 888 (Minn. App. 2009) (adopting reasoning from unpublished case).

children from harmful or injurious situations. Minn. Stat. § 260C.301, subd. 1(b)(2), (4), (6).

Here, appellants attempted to rebut the presumption of palpable unfitness by producing the following evidence. Appellants testified that they have made changes in their lives since the prior involuntary termination. Since the child that is the subject of this appeal was removed from their care, appellants attended regular supervised visits. Mother attended the supervised visits three times per week and missed one visit due to illness. Father missed additional visits due to his work schedule and physical health. Appellants discussed using a communication log to communicate with the foster parents about any concerns. Appellants attended the child's first well-child checkup and mother attended the second well-child checkup. Appellants completed a parenting capacity assessment and signed up for a parenting education course. Mother attended one session and father had not attended a session.

Appellants moved to a three-bedroom home and signed a year-long lease. Appellants testified the home had no safety hazards and they had items to baby-proof the home and care for an infant. Mother testified she was a licensed driver, and her vehicle was paid-off and insured. Father testified that he did not have a driver's license but relied on mother for transportation and was willing to take the steps to get his license. Appellants testified they had no interactions with law enforcement since the prior termination.

At the time of trial, mother was recently employed on the night shift. Mother testified that she talked to her employer and, if reunited with the child, her schedule would change to the day shift, so they can receive childcare assistance. Father testified that he

was not employed but was expecting a call back from mother's employer and would be employed at the same place as mother.

Appellants testified about working on their health issues. Mother testified she attended therapy regularly, had a diagnostic assessment, and was working on addressing life stressors and coping strategies with her therapist. Mother also testified that she was working with her providers to find the right medication and that medication assisted her with her parenting because it helped with focus, anxiety, and tiredness. Father agreed with his mental-health diagnoses and was willing to attend a stress- or anger-management program and complete a medication evaluation. Father had a therapy appointment scheduled for a few days after trial.

The district court determined that appellants did not meet their burden of production and failed to rebut the presumption of palpable unfitness. Appellants did not introduce any evidence as to how they would prevent the child from suffering the same egregious harm found in the previous TPR action; further, appellants failed to raise or mention the previous egregious harm in their testimony.

The district court's detailed findings show that the district court made the essential determinations to support termination of appellants' parental rights. The district court specifically stated that appellants failed to meet their burden of production at trial regarding the egregious harm suffered by C.M. because they, "failed to introduce any evidence as to how [appellants] would prevent the child from suffering the same egregious harm that [C.M.] suffered; further, [appellants] failed to raise or mention the harm C.M. faced at all." As it relates to egregious harm the district court also determined:(1) neither mother nor

19

father acknowledged the injuries to C.M. that formed the basis for the egregious harm finding or stated how they intended to prevent injury to a baby in their care; (2) mother did not address the previous findings of egregious harm in the prior TPR and did not testify as to how she would protect the child from physical harm, how she would manage stress while raising a newborn, or who she would allow to watch and/or care for her newborn in her absence; (3) father had not completed a comprehensive chemical-use assessment and had not begun any courses for stress or anger management; (4) appellants provided conflicting testimony regarding how they intended to provide care for the child if both of them were at work; (5) appellants' testimony did not address how potentially placing their newborn in daycare would prevent her from experiencing the same egregious physical harm experienced by C.M.; (6) appellants' testimony did not address how the child would be protected from family members, particularly in light of specific findings that the perpetrator of the egregious harm was unknown but was likely one of six individuals: appellants, mother's parents, mother's minor brother, or father's mother; and (7) appellants did not provide any testimony about any support system they had to assist them in providing care, whether family members would be allowed to see the child, and how appellants would protect the child from experiencing egregious harm.

Appellants introduced evidence that in the short time between the two TPR actions (less than three months), they made progress. But based on the evidence in the record, and in particular their failure to address the underlying facts regarding the egregious harm underlying the first TPR, the record supports the district court's determination that the evidence appellants produced at trial was insufficient to rebut the presumption of palpable

20

unfitness. Although appellants produced evidence about their mental health and home environment, appellants did not introduce evidence to address the finding of egregious harm in the prior termination, elaborate on how they would prevent the child from experiencing egregious harm in their care, or explain who they would protect the child from. Even when we take everything the appellants say as true, it is not sufficient to overcome the presumption of palpable unfitness because they have not addressed the underlying reasons for the original termination.

In making the determination that the parents failed to rebut their burden, the district court accurately articulated the statutory presumption, and discussed the "easily rebuttable" nature of the statutory presumption. The district court accurately applied the correct standard when analyzing whether the parents produced sufficient evidence to rebut the palpable-unfitness presumption. *See J.A.K.*, 907 N.W.2d at 248. When considering the underlying facts of egregious harm in the previous termination, we conclude appellants did not produce sufficient evidence to rebut the presumption of palpable unfitness. Thus, the district court did not err by concluding that appellants failed to rebut the presumption that they are palpably unfit to parent.

**V.      The district court did not err by finding that the county made reasonable efforts to reunite the family and correct the conditions that led to out-of-home placement.**

Appellants argue that the district court erred by finding that the county made reasonable efforts because the county did not file case plans with the district court and thus the efforts were neither timely nor reasonable.

21

In granting a TPR petition, a district court must "make findings and conclusions as to the provision of reasonable efforts" by the county. Minn. Stat. § 260.012(h) (2022). Reasonable efforts "for rehabilitation and reunification are always required" until the district court determines that the county has filed a petition stating a prima facie case that one of five situations exists justifying cessation of such efforts. *Id.* "The district court must also consider how long the county was involved and the quality of its efforts." *In re Welfare of Child of J.H.*, 968 N.W.2d 593, 601 (Minn. App. 2021), *rev. denied* (Minn. Dec. 6, 2021). "[W]hat constitutes 'reasonable efforts' depends on the facts of each case." *Id.* We review factual findings for clear error. *S.E.P.*, 744 N.W.2d at 386.

If a county determines that a child must be removed from a parent, the county "shall . . . prepare an out-of-home placement plan addressing the conditions that each parent must meet before the child can be in that parent's day-to-day care." Minn. Stat. § 260C.219, subd. 1(c)(1) (2022). "An out-of-home placement plan means a written document . . . prepared . . . jointly with the child's parent . . . ." Minn. Stat. § 260C.212, subd. 1(b) (2022). The plan shall be signed by the parent, submitted to the court for approval, and explained to all persons involved in its implementation. *Id.* It is important for the case plan to be filed with the court to allow the county and the parents to engage with the court about what aspects of the case plan are reasonable under the circumstances. *See S.E.P.*, 744 N.W.2d at 388 ("[O]nce a case plan has been approved by the court, the appropriate action for a parent who believes some aspect of the case plan to be unreasonable is to ask the court to change it . . . .").

22

When reasonable efforts are required, the county cannot arrogate to itself the authority to not provide a statutorily required plan. *See In re Welfare of Child of T.R.*, 750 N.W.2d 656, 658 (Minn. 2008) ("The [c]ounty may not unilaterally determine that reasonable efforts to rehabilitate a parent and reunify a parent and child would be futile; the [c]ounty must make reasonable efforts to rehabilitate a parent and reunify a parent and child until such time as the district court determines that reasonable efforts are not required.").

Yet, a lack of a filed case plan is not dispositive. "[F]ailure to provide [a written case plan] does not automatically warrant reversal if the circumstances render the lack of a case plan excusable." *In re Welfare of Children of A.R.B.*, 906 N.W.2d 894, 898 (Minn. App. 2018). A failure to provide a timely written plan is reversible error however, if parents have not been informed of, or do not understand, the conditions they must satisfy to achieve reunification. *See In re Welfare of Copus*, 356 N.W.2d 363, 366-67 (Minn. App. 1984).

Here, the district court found that in a short period of time, the county set up supervised parenting time, engaged in case planning, provided referrals to services, and maintained regular contact with appellants. The district court found the county was making reasonable reunification efforts despite the prior termination based upon egregious harm. These findings are supported by the record and are not clearly erroneous.

Regarding the case plans, the district court determined that mother participated in developing a case plan, did not sign the case plan, and several items on the case plan were not completed at the time of trial. The district court determined that father had input in

creating his case plan and discussed the recommendations outlined in his case plan. The record demonstrates that the county engaged in case planning with appellants, appellants participated in a case-planning meeting, and appellants contributed to the development of their case-plan goals. Mother testified that she participated in developing the case plan and testified she had a copy at her house. Father also testified about items in his case plan. There is nothing in the record suggesting that appellants did not have case plans or did not understand the conditions of their case plans.

Furthermore, appellants did not raise this issue with the district court. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that appellate courts generally address only those questions previously presented to and considered by the district court). Thus, based on these circumstances and our review of the record, the district court's finding that the county made reasonable efforts is not clearly erroneous and the county's failure to file the case plans does not require reversal.

**VI.     The district court did not abuse its discretion by ruling that there was clear and convincing evidence that termination of parental rights was in the child's best interest.**

Appellants argue that the district court erred by ruling that termination of parental rights was in the child's best interest. If a district court determines that a statutory ground for termination exists, it must also determine that termination is in the child's best interest. *In re Welfare the Child of J.R.B.*, 805 N.W.2d 895, 905 (Minn. App. 2011), *rev. denied* (Minn. Jan. 6, 2012). We review a district court's conclusion that termination of parental rights is in a child's best interests for an abuse of discretion. *Id.* We give "considerable

deference to the district court's findings" because the analysis requires credibility determinations. *J.K.T.*, 814 N.W.2d at 92.

To evaluate the best interests of a child in a proceeding to terminate parental rights, a district court must consider "(1) the child's interests in preserving the parent-child relationship; (2) the parent's interests in preserving the parent-child relationship; and (3) any competing interests of the child." *In re Welfare Child of A.M.C.*, 920 N.W.2d 648, 657 (Minn. App. 2018) (quotation omitted); *see also* Minn. R. Juv. Prot. P. 58.04(c)(2)(ii) (enumerating these factors). "Competing interests include health considerations, a stable environment, and the child's preference." *J.K.T.*, 814 N.W.2d at 92. The interests of the children, not the parents, predominate in termination matters. *See* Minn. Stat. § 260C.301, subd. 7 (2022) (providing that when a statutory basis to terminate parental rights is present, "the best interests of the child must be the paramount consideration)." "[A] parent's love and desire to care for her children does not outweigh her children's needs for basic care and adequate nutrition." *In re Welfare of Children of K.S.F.*, 823 N.W.2d 656, 668 (Minn. App. 2012).

The district court did not abuse its discretion in concluding that the competing interest of the child, specifically the child's safety, outweighed the interests in preserving the parent-child relationship. The district court considered that appellants and the child had an interest in preserving the parent-child relationship. The district court found that appellants "testified that they are successful in comforting [the child], that [the child] smiles at them, and is able to sleep in their presence." The district court considered the

testimony of the GAL that the parent-child relationship and the child's connection to appellants would be permanently severed.

The district court also considered the child's competing interests. The district court weighed the testimony of the GAL and social worker that appellants have not addressed the cause of the egregious harm that led to the prior termination of parental rights, and that the child is vulnerable and needs a caregiver who is safe, stable, chemical free, and aware of their parenting strengths and weaknesses. The district court did not ignore appellants' positive testimony, but thoroughly explained how, when considering all the evidence, appellants' testimony was insufficient to address the previous finding of egregious harm and the district court's concerns for the child's safety.

Therefore, the district court did not abuse its discretion because the district court carefully considered the evidence and determined that the child's need for a safe, stable environment outweighed the child's and appellants' interest in preserving the parent-child relationship.

## DECISION

The district court did not abuse its discretion in terminating appellants' parental rights. The prior order terminating appellants' parental rights to C.M. and A.M was a showing that appellants' rights to one or more children had been involuntarily terminated under Minnesota Statute section 260C.301, subdivision 1(b)(4). Therefore, there was a statutory basis for termination and appellants were presumed to be palpably unfit parents. Upon our review of the record, parents did not meet their burden of production to produce sufficient evidence to rebut the presumption of palpable unfitness. The appellants forfeited

26

its argument that the district court violated their right to due process by applying the statutory presumption of palpable unfitness before the completion of the appeals process in the prior TPR because appellants did not present their due-process argument to the district court. Moreover, the district court did not abuse its discretion in denying appellants request for a continuance based on the delay to the permanency timeline. Additionally, we conclude the county's failure to file the case plans is not reversible error under the circumstances and the district court did not abuse its discretion by finding that termination of parental rights was in the child's best interests.

**Affirmed.**